THE ATTORNEY GENERAL ex rel. STICKLE and others *vs.* THE MORRIS AND ESSEX RAILROAD COMPANY.

PRUDDEN *vs.* THE SAME.

1. When lands are laid out by the owner in blocks and lots, with streets, either upon a map or by opening and marking out streets upon the ground, purchasers of lots from such owner, by deeds bounding them upon such streets, acquire an easement or right in them, and are entitled to pass over them, and to have them kept open for passage to and from their lots, at least as far as the next open street on each side, and when the streets are taken for public highways, are entitled to have them taken for that purpose without compensation.

2. Such streets do not become public streets so as to charge the public with the burthen of keeping them in repair, until the proper authorities have, by some act, accepted them as public streets or highways. Where the dedication is by a map, and sales by that map, the public acquire the right to them as public streets by use for twenty years. Where the dedication is by actually marking out and opening the street for public travel, a use for much less time is sufficient.

3. Until the public have acquired a right, purchasers of lots who have acquired the easement may surrender it to the owner, and the lands will be free from the dedication. And if the public, having accepted the dedication and laid out a highway upon the land dedicated, afterwards abandon it and vacate the highway, it seems that the purchaser would still retain his easement or right of way.

4. The vacation of a public highway which crosses another public street

or highway, even where for a short distance it runs along the highway so crossed, where the two highways are parts of different routes and were laid out for different objects, will not vacate the part of the road crossed by the highway so vacated.

5. The grant in a charter of the right to construct a railroad on a specified route, gives, without express words, the right, as against the public, to cross all public highways which said route may intersect. But a grant will not be implied to construct a railroad upon or along a public highway, unless this is necessary for the route as authorized.

6. The right which the owner of a lot fronting upon a street has to have carriages and vehicles of all kinds stop in front of his lot and stand there for the time necessary for the letting out and taking in persons and goods, is a right in that part of the street different from the right of the public at large, and any encroachment or appropriation of the street opposite his premises, which abridges or takes away that right, is an injury peculiar to him, for which he may have redress by suit in his own name.

7. The purchase of the fee of lands in a public street, does not authorize a railroad company to construct their road upon it as against the public, without express authority of law, or as against individuals who have the right or easement of passing over it.

8. Adverse possession or user of a public street gives no right as against the public.

9. The construction of a railroad operated by steam upon a public highway, without authority of law, is a nuisance which will be restrained by injunction.

Rules to show cause why an injunction should not issue in the above cases, had been granted, and the defendants having filed their answers, leave was given to take depositions to be used at the hearing on the rules. The alleged injury, against which relief was asked, being the same in both cases, by arrangement of counsel the two causes were argued together, and the same depositions used in both.

*Mr. Forsyth* and *Mr. Pitney,* for application.

*Mr. Vanatta,* contra.

THE CHANCELLOR.

The injunction applied for, is one to restrain the defendants from laying a second track of their railroad in a street in the village of Dover, in the county of Morris, called Dickerson

street. The defendants, about twenty years ago, laid one track of their road in Dickerson street, along or near the south side of the street, and are now about to lay another track to the north of that, which will extend into Dickerson street, and occupy about eleven feet more of its width. The relators in the information, and the complainant in the bill, are owners of lots on the north side of Dickerson street, opposite the part where the additional track is proposed to be laid, and laying that track would reduce the width of the street in front of their premises for practical use as a street.

The questions raised are, whether Dickerson street has been dedicated to and accepted by the public so as to become a public highway, in which the right of the public can be protected by information; and whether if it had become a public highway, the defendants are not authorized by their charter to occupy it by their road. Also, whether the land which is occupied by the street, was not dedicated to the owners of lots fronting upon it in such way as to give them an easement or right to have it kept open for a way to its full width. And whether, if such easement does not exist, the complainant in the bill does not suffer an injury by narrowing the street in front of his lot and buildings, different from that sustained by the public at large, so as to entitle him to relief by a suit in his own name.

About forty years ago, the land occupied by Dickerson street and the lots of the complainant and relators, and in fact by the greater part of the village of Dover, was owned by Henry McFarlan. He, about that time, laid it out into a village plot, by streets, which he had marked out on maps made of the village, kept in his office and exhibited to purchasers of lots. These streets, or many of them, were afterwards, from time to time, opened and staked out upon the ground, as it become necessary or useful for the sale of lots, or public travel.

The main street was Blackwell street, which ran nearly east and west, and was laid out seventy-five feet in width. Dickerson street was south of, and parallel to Blackwell

street, at the distance of two hundred and seventy feet from it, was the most southerly street on the plot and was sixty-six feet wide, except at one part where that width would reach lands owned by William Ford, and in front of his tract it was laid out only sixty feet wide, so as to leave six feet between his land and the street. Ford's tract is now owned and occupied by the defendants for a depot. McFarlan also laid out and opened cross streets running north and south. The most westerly was Warren street, and then, proceeding to the east, came Sussex, Morris, Essex, and Bergen streets, in succession. Dickerson street had been opened and staked out before 1835, as far west as the west side of Warren street; and the trustees of McFarlan's estate, who after his death had been invested with full power for that purpose, by two deeds made in 1837 and 1839 respectively, conveyed to the complainant, Byram Prudden, a lot at the northwest corner of Dickerson and Morris streets, extending one hundred feet along Dickerson street and seventy-five on Morris street; these deeds describe the lots as bounding on Dickerson street and on Morris street. These streets were at that time laid down and designated by these names on maps then in possession of McFarlan's trustees, which he had procured to be made, and it is not shown that they had any other origin or existence, except being opened on the lands.

Before McFarlan laid out the town plot, there was an old public road running through it, which had once been a turnpike road, but which the turnpike company had abandoned, and which, by legislative authority, had become a public highway, which the proper public officers were bound to maintain and keep in repair. This road originally crossed the block between Warren and Sussex streets, north of Dickerson street, diagonally, and came into Dickerson street between Sussex and Morris streets, where, taking the direction of Dickerson street, it nearly coincided with it for three or four blocks, and then ran to the south of the range of Dickerson street. In 1848, the defendants constructed their road through Dover. Surveyors of the highways, who had

2 K *

been appointed for the purpose, by a return, recorded in July, 1848, vacated the old public road from the corner of Sussex street and Blackwell street, to a point forty-four chains easterly of Sussex street. The road had, by user or legislative authority, been changed before this, so that instead of crossing the road diagonally, it run along Blackwell street to Sussex street, then southerly down Sussex street to Dickerson street, and then eastwardly along Dickerson street to Morris street. After this vacation, the trustees of the McFarlan estate, by deed dated September 9th, 1848, granted to the defendants the right to construct their railroad on a strip of land fifty feet wide, being twenty-five feet on each side of a line run parallel to the north side of Dickerson street, south of and fifty feet distant from it. Dickerson street was laid out entirely on the McFarlan estate, and as forty-one feet of the strip upon which the grant to the defendants was made was within Dickerson street, nine feet of the fifty was upon the Ford lot, which defendants afterwards purchased, for the whole front of that lot, and much of the residue of the nine feet was upon lands of the McFarlan estate south of Dickerson street. As the fee of all this fifty feet within the line of Dickerson street, was vested in the trustees of the McFarlan estate, the grant to the defendants would authorize them to construct their road upon it, unless the public or individuals had acquired rights in it that would be infringed by such construction. It is conceded that the track which the defendants propose to build, is upon this strip of fifty feet included in the grant.

The information is based upon the claim that Dickerson street is a public highway, and was such before the grant to the defendants of September, 1848. It is shown by the depositions, and is not disputed, that for years prior to 1846, Dickerson street had been opened in front of the premises of the relators and the complainant, from Morris street to the west side of Warren street, and that it was used by the public as a street. It also appears from exhibits in the cause, that before 1848, the trustees of the McFarlan estate

had sold to the relators and the complainant, or those under whom they claim, and to others, lots on the north side of Dickerson street, between Warren and Morris street, and described these lots in the conveyances as abutting on Dickerson street. It is now too well settled to be doubted or discussed, that if the owner of a tract of land lays it out in blocks, lots, streets, and squares, and sells lots by reference to the map, or in the conveyance abuts them on the streets so laid out, the streets and squares on the maps so referred to, or the street on which the lot is so abutted when the map is not referred to, became thereby dedicated to public use; or, if the owner of land marks out a street by erecting buildings on each side of it, and then sells or leases these buildings, the space so marked out is thereby dedicated to public use. The purchasers of the lots acquire an easement or right in the lands so laid out as streets, and have a right to pass over them, and to have them taken by the proper authorities for public streets, without compensation to the owner. By such dedication, the streets do not become public highways; they are not such until accepted by the proper public authorities, or until used by the public as highways for twenty years; until then, there is no right acquired by the public, but only by the purchasers of lots, by whose consent the easements may be surrendered and the land freed from all claim by the rest of the public. These principles have been declared as law by the courts of this state, and affirmed by the Court of Errors, by repeated decisions. *Den* v. *Dummer, Spencer* 106 ; *Holmes* v. *Jersey City*, 1 *Beas.* 299 ; *Jersey City* v. *Morris Canal and Banking Company, Ibid.* 547.

Dickerson street in front of the lots in question, has become a public highway by being used as such by the public for more than twenty years. This was determined as sufficient in *Holmes* v. *Jersey City*, and in *Smith* v. *The State*, 3 *Zab.* 130 ; *S. C.*, in the Court of Errors, *Ibid.* 712. It may be, that in order to make the township liable for the repair of this road, some other act of adoption by the proper authorities was

necessary; but nothing further is necessary to establish the right of the public to use and travel it as a public highway. In this case, as the land was dedicated to the public by the act of the owner in staking out and opening a public street over it, as well as by selling lots bounded on that street, it did not require user by the public for twenty years to acquire the public right; the use for a much shorter time was sufficient. This right was acquired by the public in the whole of Dickerson street, between Warren and Morris streets, for its full width, prior to 1848. It was then a public street. And the vacation by surveyors, in 1848, of the old public highway, which, for part of the distance between Morris and Sussex streets, ran over and nearly coincided with Dickerson street, cannot be held to have vacated Dickerson street, or even the part which it so run over, for it did not affect the residue of that street, of which this was a necessary part. And purchasers of lots before that year, had become invested with the easement or right to have this street kept open as a public street. The grant to the defendants, then, was clearly subject to those rights in the street which had been previously acquired.

The adverse use and possession of the lands to be occupied by the new track can be of no avail. In the first place, depositing hoop-poles or other goods to be transported on their railroad upon the part of the public road adjoining their track, is no adverse use or possession; and, secondly, no adverse possession can affect the right of the public to a street or highway.

An obstruction or nuisance to a public highway is an injury to the public, for which an information in the name of the attorney general is the proper remedy.

It cannot be questioned, that the occupation of a public road by the track of a railway, operated by steam, effectually prevents the use of the part so occupied for the track by the public as a highway for ordinary travel, for which these lands were dedicated, and for which ordinary roads are laid out.

Such occupation, then, unless authorized by law, is a public nuisance, which this court must restrain.

The defendants claim, that they are authorized by their charter to lay their road *along and upon*, as well as across and over, public streets. This court, in the case of *The Morris and Essex Railroad Co.* v. *Newark*, 2 *Stockt.* 352, decided that this charter did not confer the right to lay their track along and upon public streets, unless in a case of necessity, which is not pretended to exist here. The defendants, then, are not authorized by law to lay their track upon this street, and the injunction applied for by the information filed must be granted.

The bill filed by Byram Prudden presents the additional question, whether a suit can be maintained by an individual for a nuisance in a public road or street, because it narrows and obstructs the street in front of his premises. I am inclined to think that there is in such case a special injury to the individual, different from that to the public at large. The lot of Mr. Prudden is occupied by a shop and dwelling-house. Besides the right of passing along the highway, he has the right of having wagons and vehicles of all kinds stand on the street in front of his premises for a sufficient time to load or unload, and to occupy for that purpose so much of the street as is necessary; provided, it does not obstruct or impede public travel. Every serious encroachment on the width of the street narrows this right, which is an injury only to him, and not to the public. Such encroachment has been held to be an injury to the individual, in several cases. *Corning* v. *Lowerre*, 6 *Johns. C. R.* 439; *Spencer* v. *Lond. & Birm. R. Co.*, 8 *Sim.* 193; *Sampson* v. *Smith, Ibid.* 272.

In this case, Prudden has also a right by his purchase before the grant of 1848, to have this open to the full width. The public have adopted the street as a highway, and have not abandoned or vacated the right, and the right of Prudden by the dedication, therefore, cannot be destroyed. This is a right special to him, and not held in common with the public.

Whether, after an acceptance by the proper authorities, or

by public use, if the street should be vacated by legal proceedings for that purpose, and thus discharged from the public burthen, the owners of lots fronting upon the part so vacated, would retain the easement of a right of way, so far as to have a right of passage from and to the lots purchased, is perhaps not settled by direct adjudication. The intimation in the opinion of Justice Vredenburgh, in *The State* v. *Snedeker,* 1 *Vroom* 84, and the doctrine maintained by Chancellor Walworth, in *The Trustees of Watertown* v. *Cowen,* 4 *Paige* 510, and by the Supreme Court of New York, *In re 29th Street,* 1 *Hill* 189, and in *Bissell* v. *The New York Central Railroad Co.,* 26 *Barb. R.* 632, would seem to point to a conclusion founded on correct princples; which is, that the purchaser of a lot upon a street so dedicated, acquires a perpetual and indefeasible right of access to his lot over the same, or at least over so much as leads from his lot to the next adjoining public street on each side, whether the same be accepted and adopted by the public as a highway or not, and retains it, if after acceptance the same be abandoned by the public as a public highway. But it is not necessary to decide this question here; the public have not abandoned or vacated the part of this street, on which the new track is proposed to be laid.

On either ground, Prudden is entitled to maintain a suit in his own name, and to have the injunction applied for in his suit.