10337

LEE *ET AL.* v. SUMTER PINE & CYPRESS CO. *ET. AL.*

(102 S. E. 2.)

1. APPEAL AND ERROR—APPELLANT MUST SATISFY COURT THAT FINDING IS AGAINST PREPONDERANCE OF EVIDENCE.—An appellant has the duty of satisfying the Court that the finding of fact complained of is against the preponderance of the testimony.

2. LANDLORD AND TENANT—RENT NOT RECOVERABLE WITHOUT PLEADING DEFAULT.—A judgment for unpaid rent cannot be sustained where the complaint did not allege that defendant had breached its contract to pay rent.

3. LANDLORD AND TENANT—TENANT MAY TERMINATE LEASE BY ABANDONING CONTRACT WITHOUT THIRTY DAYS' NOTICE.—Where tenants paid rent up to the time they abandoned their contract, the abandonment sufficiently terminated the lease without giving 30 days' notice.

Before RICE, J., Sumter, Fall term, 1915.   Modified and affirmed.

Action by R. D. Lee, I. C. Strauss, and Davis D. Moise, as executors, against the Sumter Pine & Cypress Company and others.   Judgment for plaintiffs, and the named defendant appeals.

The decree of the Court below reads as follows:

On February 2, 1909, and some time prior thereto, the Rocky Bluff Cypress Company, a corporation owned by J.

L. Scarborough and James H. Scarborough, defendants, was conducting a lumber manufacturing business on the north side of Rocky Bluff Swamp, in said State and county; and, in addition to the machinery and equipment necessary for converting logs into lumber, they also owned quite a large quantity of standing timber of different kinds, with tramways, cars, etc., used to move the logs from the woods to the point where their sawmill was located.

On the said date the Rocky Bluff Lumber Company entered into a written agreement to sell the said plant with all of its equipments, including the use of the tramways and all of their timber rights, to the Sumter Pine & Cypress Company, one of the defendants and a South Carolina corporation. And on February 9, 1909, a deed consummating the said agreement was executed by said Rocky Bluff Lumber Company, by which they conveyed all of the said property, together with certain easements pertaining thereto, to the defendant, the Sumter Pine & Cypress Company. The performance of the conditions of said contract and of the said deed of conveyance on the part of the said Rocky Bluff Lumber Company was guaranteed by the said J. H. Scarborough and H. L. Scarborough; they signing the said contract and the said deed, along with the said Rocky Bluff Lumber Company. The said contract and the said deed contained also quite a number of conditions and stipulations to be performed by the said Sumter Pine & Cypress Company, which conditions and stipulations will hereinafter be adverted to in the consideration of the issues now before us. A part of the purchase price of said property was paid in cash and notes, and a part was to be paid as the timber was manufactured into lumber. In order to secure the deferred payments and to secure also the faithful performance of the terms and conditions of the sale, the said Sumter Pine & Cypress Company in the same deed hereinafter referred to executed and delivered to the defendant a mortgage on all of said property so conveyed to them. Marion Moise, of

said county, became the owner of the said mortgage and of all of the said rights of Rocky Bluff Lumber Company and J. L. Scarborough and J. H. Scarborough, which it and they acquired under the said contract and mortgage.

In 1910 said Marion Moise died leaving of force his last will and testament, and the plaintiffs are the duly qualified executors of said will. Since the commencement of this action, the defendant, J. H. Scarborough, has died, and R. O. Purdy has been duly appointed the administrator of his estate and made a party defendant to this action.

The said executors began this action in January, 1912, alleging various and sundry breaches of the terms of said contract of sale and of said mortgage, and asking for judgment against the defendant, Sumter Pine & Cypress Company, in the sum of $30,892.68 as sums due under the said contract and mortgage, including therein actual and punitive damages, and asking also that said Sumter Pine & Cypress Company be enjoined and restrained from removing and disposing of any of the said property until the termination of this action, and for other relief not necessary to state at this point; asking also judgment against the other defendants for foreclosure of the mortgage and the sale of the property.

The defendants, the Sumter Pine & Cypress Company, answered, denying any breaches of the term and conditions of the said contract and mortgage, and denying that they were due plaintiffs any sums whatever, and setting up various defenses to the action.

The defendant, H. L. Scarborough, and R. O. Purdy, administrator, answered, adopting the allegations of the complaint as their answer.

The testimony was taken before the master of said county, and the cause was argued before me at Sumter on December 3, 1914, and the record and written arguments and authorities were later forwarded to me at Aiken.

The contract price for the sawmill plant and the equipments was $12,000, of which sum $4,500 was paid in cash and balance in notes which have also been paid. The timber, however, was to be paid for at the rate of $2.50 per thousand feet, long measure, as cut and delivered at mill, and it is over the timber and damage to the tramways used in conveying same to the said mill that the contention arose.

The purposes for which said mortgage was given are set out on pages 10-16 of the instrument signed by all of said parties, which said instrument is both a deed of conveyance and a mortgage as follows: "To secure the payment of promissory notes given for part of the purchase money of said sawmill plant—to secure the payment of the sums of money reserved. by the party of the second part, out of the purchase of the timber hereinabove conveyed," "to secure the faithful performance of the terms of the contract on behalf of the party of the second part." The said deed also provides that its terms are not to abrogate or change any of the provisions of the contract of February 2d, above referred to, but that the latter is to be deemed and taken as part and. parcel of the said deed.

The contract of February 2d provides that in case any difference shall arise between the parties such differences shall be settled by arbitration, and the defendants, Sumter Pine & Cypress Company, claim that, as no attempt at arbitration was made by plaintiffs, they have no standing in this Court. This position cannot be sustained. The evidence shows that the defendants were prepared to dismantle the mill and dispose of all their personal property covered by said mortgage without regard to any claim held against it by the plaintiffs, and were prevented from doing this by an order of this Court. But independently of this, no agreement to arbitrate can oust this Court of jurisdiction. *Jones v. Power Co.,* 92 S. C. 263, 75 S. E. 452, Ann. Cas. 1914b, 293.

13—S. C. 113

The vendors guaranteed that the aggregate of the timber sold should not be less than 11,000,000 feet on the following tracts, Gaylord, Westberry, Richardson, Dick, R. M. Edens, DuBose, H. L. Scarborough and McLaughlin inclusive, and in order to secure the purchasers from inconvenience or loss on account of any shortage in the amount of lumber so guaranteed 25 cents per thousand feet was to be retained by said purchasers out of the proceeds of said timber, until it shall be definitely determined by actual cut as to whether or not the timber would run short. If there proved to be a less amount than guaranteed, the purchasers were to have the option of either retaining the 25 cents per thousand feet as liquidated damages, or of calling upon the vendors to make good the shortage or substituting other timber satisfactory to the purchasers. The said contract also contained a provision that the Sumter Pine & Cypress Company shall not be obligated to cut or lumber land, where, on account of previous lumbering or scattered growth, lumber must be prosecuted at a loss. I am not attempting here to state the literal terms of the contract and deed, but I am referring to same in a general way only.

Some time before the commencement of this action, the said Sumter Pine & Cypress Company, finding that they were losing money on the operation of the mill, ceased operations, and prepared to go out of business. In their answer they allege that they lost money on the operations of the mill and also that they had added something like $9,000 worth of machinery and appliances to that purchased from the Rocky Bluff Lumber Company. They alleged that the timber sold fell far short of the amount guaranteed, and that their failure to operate successfully was due to the shortage in timber and its scattered condition; and alleged further that they were absolved from their contract to cut any more of said timber, and, as above stated, denied owing plaintiffs any sum under the said contract or mortgage. They alleged,

further, in answer to an allegation of the complaint, that they had cut only the best of the timber and had conducted operations in a wasteful manner, that, where timber was cut by them, it was cut clean and in accord with the spirit of the said contract.

The evidence satisfies me that the Scarboroughs were perfectly honest in their belief that there was more than 11,000,-000 feet of timber on the aforesaid tracts of land conveyed, when they entered into said contract; but a consideration of all of the evidence bearing on the point satisfied me that they were mistaken, and that there was not, at the time of the execution of the deed conveying the timber, as much of said timber as was guaranteed to be there. But the contention of the defendants, Sumter Pine & Cypress Company, that the scattered and inaccessible situation of the timber conveyed prevented their cutting and manufacturing same at a profit and absolved them from continuing to cut said timber, cannot be sustained. Such a construction of the contract would place the vendors in the position of guarantors that the said Sumter Pine & Cypress Company should make the transaction a paying one, with no powers given the vendors to direct or control the lumber operations. Some of the officers of the said Sumter Pine & Cypress Company were experienced mill and timber men, and examined the timber and mill situation and the tramways and other property conveyed, and went into the transaction with their eyes open.

As to the physical properties conveyed, the only uncertain condition confronting them was to the quantity of timber, and this they secured themselves against by the provision in the contract hereinabove referred to; neither can the provision on page 7 of the contract, which provides that the failure of the first and third parties to said contract to make substitution of timber in case of shortage, as above mentioned, shall destroy the mortgage lien, avail the defendant,

Sumter Pine & Cypress Company, even though there was less than 11,000,000 feet of pine timber, because the parties of the first and third part had the right to make good the deficiency which they were never given the opportunity of doing. The provision as to cutting scattered or inaccessible timber does not refer to the bulk of the timber conveyed, but to isolated or undesirable trees or bunches of trees, where good lumbering would require them to be left on account of the unusual expense to be incurred in getting them out and to the mill.

There is abundant evidence showing that with proper management the Sumter Pine & Cypress Company would have operated successfully, or at least, should have done so; but I do not think that this can affect the issues before us, because, as we have already seen, the vendors did not guarantee to the purchasers any profit on their mill and timber operations. The failure of the pine timber to aggregate 11,000,000 did not absolve the said Sumter Pine & Cypress Company from their contract to cut and pay for the timber actually conveyed.

It is true, as shown by the evidence, that the larger the amount of timber that can be moved successfully without changing the appliances for handling same, the greater the profit, and that it is, therefore, always desirable in such operations to have the timber to be handled as concentrated as may be. But, as already stated, the Sumter Pine & Cypress Company had the whole situation before them when they entered into the contract and relied upon their own judgment and cannot now be heard to complain.

The Sumter Pine & Cypress Company also contended that only the pine timber was purchased. This is true as to the contract of February 2, 1909, and the guaranty of 11,000,-000 feet referred to pine timber exclusively, but the deed of February 9th carries all the timber owned by the vendors on the tracts mentioned, and includes the hard woods owned by the vendors on the said lands

The Sumter Pine & Cypress Company also contend that the following clause in said deed conclusively shows that only the pine was conveyed to it: "The timber conveyed is that described in and agreed to be conveyed by the contract hereinbefore referred to and all of same is to be cut and removed from said land under the terms hereof and of said contract."

When we refer to a description of the timber sold as set out in said deed, we find the following: On the Gaylord contract: "All the sawed timber, etc." On the Robert M. Edens contract: "All the pine timber 6 inches in diameter and upwards in size, etc." On the Gertrude E. Richardson tract: "All of the timber suitable for sawmill purposes, etc." On the Hattie DuBose: "All of the pine timber, standing, lying or being on the low land or swamp land (excepting only the hill land, etc.)." "All the pine timber and trees standing and lying on the entire plantation and lands known as the Lee-McLaughlin place, etc., and the Glenwood (Dick) place." "All of the swamp pine timber standing or lying, etc." The two Westberry tracts: "All of the saw pine or cypress timber, etc." On the H. L. Scarborough tract: "All of the timber suitable for sawmill purposes, etc."

The evidence shows that on the R. M. Edens tract there was only about 50,000 feet of pine and 194,000 feet of hard wood. On the Richardson, DuBose, Westberry, and Lee-McLaughlin tracts, pine almost exclusively, and on the H. L. Scarborough, 1,017,000 feet of hard wood and a little over one-fourth that amount of pine. It is unquestioned that the terms "all sawmill timber," "all timber suitable for sawmill purposes," include hard wood, and that the latter term included poplar, red gum, cypress, oak, black gum, tupelo, etc., and practically all timber on said land suitable for manufacturing into lumber, except yellow pine.

An inspection of the terms used in describing the kind of timber will show that, if we accept the contention of the Sumter Pine & Cypress Company that the pine alone on all

the tracts described is conveyed, then we do violence to the terms of the written deed itself, in which, before the description of the property conveyed in the deed, is found the following sentence showing what was intended to be conveyed by the deed: "All of the timber now owned by said parties respectively, in the parcels and by the persons as follows." Description elsewhere referred to in this decree.

It is not the province of the Court to make, change or alter the terms of the contracts of parties, but to construe and enforce them when called upon to do so. Since the deed of February 9th is to include the terms of the contract of February 2d, we should, if possible, harmonize any apparent conflict in any of the provisions found in the said two instruments. A circumstance worthy of consideration in the construction of said deed is that in the contract of February 2d appears a provision that the deed shall contain an option by which the said Sumter Pine & Cypress Company should have the right to purchase hard wood on said lands at any time within 90 days from the date of said conveyance.

The deed, when written, contains no reference to any such option, but does contain the descriptions of the timber as above set forth.

It seems to me, then, that there is no other reasonable inference to be drawn from the circumstances mentioned than that the parties intended to substitute for said option the outright purchase of said hardwood, and said purchase was included in the deed. The witness, H. L. Scarborough, says that the reason there was no option put in the deed was because the deed included in its term the sale of the said hard woods. He says, further, an agreement to include the said hard woods in the sale was reached between the contract of February 2d and the deed of February 9th. One of the witnesses for the defendants accounts for the description in the deed by saying that they were copied from other deeds. This witness also denied that there was any purchase of the

hard wood; but independent of what the witnesses testified to on the point, when we recall what has already been said in regard to the importance of location, when handling timber, I think a fair construction of the following clause in the deed, "The timber hereby conveyed and agreed to be conveyed by the contract herein referred to, etc.," to be the intention to fix the location, rather than the kind of timber.

There is no positive evidence of any price agreed upon for the hard wood, except that Mr. J. L. Scarborough testified that it was understood that the average price of the hard wood was to be the same as that of pine. But if this evidence of Mr. Scarborough is not to be taken and the Court is called upon to determine what should be paid by the said Sumter Pine & Cypress Company for said hard wood, it will determine that there should be paid a reasonable market price. Some witnesses testified that the kind of hard woods on the land described were worth less than pine, and some testified that they were worth more. I think, therefore, to fix the value of said hard woods at the same figure as the pine will be just and reasonable. All of the notes given in part payment for the mill, logging, lumbering, equipment, etc., having been paid, the inquiry is, now, as to what is due on the said timber contract.

There is great discrepancy in the figures of the different estimates as given in evidence before the master, as to how much timber was on the land described in the deed of conveyance after the Sumter Pine & Cypress Company quit business. When, however, we compare the estimates of the witness, L. L. Parker, with that of Mr. H. L. Scarborough, it will be found that there is a remarkably close agreement between the two. The estimates also of Mr. Cole, a veteran estimator of large experience, approached those of Mr. Scarborough and Mr. Parker. These facts, coupled with the facts also that Mr. Scarborough is thoroughly familiar with the lands on which said timber is located, and the further fact that Mr. Scarborough is well and most favorably known

to me as a thoroughly responsible man, induces me to accept his estimates on said timber as more nearly accurate than the other estimators, even though he be an interested party. Taking Mr. Scarborough's said estimates and following the terms of the deed, we have the following:

| | Hardwoods | Pine |
|---|---|---|
| All timber, Gaylord tract | 1,017,000 | 25,000 |
| Pine only, Robert M. Edens | | 194,200 |
| All timber, Gertrude E. Richardson | | 1,000,000 |
| All pine timber, Hattie DuBose | | 152,400 |
| All pine timber, Lee-McLaughlin | | 650,000 |
| All swamp pine, Glenwood (Dick) | | 36,735 |
| Pine and cypress, Westberry | 24,500 | 84,000 |
| All timber suitable for sawmill purposes, H. L. Scarborough | 1,385,000 | 300,000 |
| | 2,426,500 | 2,443,135 |

To the above must be added 500,000 feet lying on the ground on the Richardson tract and which the evidence showed could have been used, or should have been cut and used by the Sumter Pine & Cypress Company, and which had deteriorated until it is now almost, if not quite, a total loss. This brings the grand total of timber for which the Sumter Pine & Cypress Company is liable to the plaintiff up to 5,369,635 feet.

The plaintiffs, in their complaint, also contend that a great deal of damage was done by cutting the best and leaving inferior timber, and that a great many of the logs cut and delivered at the mill were not measured or paid for. There is no evidence of these matters before me, upon which the Court could reach any definite and intelligent conclusion.

The Sumter Pine & Cypress Company having retained the 25 cents per thousand feet, during the time they continued in business, and not having called upon the vendors to make good any shortage in the timber, should be held to have elected to restrain the 25 cents per thousand feet, rather than to call for any additional timber. And I think, also, that this option should be held to have extended to the timber which

they purchased and failed to get. The said Sumter Pine & Cypress Company are liable then to the plaintiff at $2.25 per thousand feet on 5,369,635 feet, amounting to $12,081.68.

In addition to this sum, the said Sumter Pine & Cypress Company are due the sum of $450 for the rent of the mill site. Scarborough says they paid up to January 1, 1912, and the lease still had three years to run.

The plaintiffs claim also actual and punitive damages against the Sumter Pine & Cypress Company for tearing up and removing the tramway. It appears, however, that most of the rails used on the tramway were leased from the Atlantic Coast Line Railroad and were not the property of the Rocky Bluff Lumber Company or H. L. Scarborough or J. L. Scarborough.

It is true that Mr. Scarborough testified that the rails had been torn up and shipped away, or, at least, most of them. But there is no evidence showing that they were not shipped back to the Atlantic Coast Line Railroad, or that the Rocky Bluff Lumber Company or J. L. Scarborough or J. H. Scarborough incurred any liability to the said Atlantic Coast Line Railroad Company on account of the moving of the said rails. Mr. H. L. Scarborough does testify that he purchased three-fourths of a mile of said rails, but as no value is placed upon them by him, and as there is nothing in the evidence by which such value may be fixed, it is impossible for the Court to fix what damage, if any, Mr. Scarborough may have sustained by the moving or appropriation of the said rails.

It is true that the witness, Scarborough, testifies that it will cost at the rate of $300 per mile to relay said tramroad, but I understand that this only includes the cost of the labor and crossties, and does not include the value of the rails. The contracts specifically state that the timber sold is all the timber owned by the Rocky Bluff Lumber Company and H. L. Scarborough and J. H. Scarborough. The value of this

timber has been fixed, with the tramroad laid down as it originally was, at $2.25 per thousand feet. It is shown conclusively by the evidence that the timber was worth more with the tramway, as stated, at the time of the sale, than it would have been worth without such tramway. Any damages, therefore, which may have occurred on account of the tearing up of the tramways, are included in the judgment for the value of the said timber.

It is, therefore, ordered, adjudged and decreed that the plaintiffs have judgment against the said Sumter Pine & Cypress Company, defendants, in the sum of $12,531.68.

It is further adjudged and decreed, against all the defendants, that the mortgage sued upon be foreclosed, and all of the property and property rights and leases mentioned and described in said mortgage be sold by the master for Sumter county on sales day in October next, or some subsequent convenient sales day thereafter, in front of the Courthouse door at Sumter during the legal hours for public sale to the higher bidder for cash, and after due and legal advertisement.

It is further adjudged and decreed that any sum or sums of money received for any of the said properties sold since the commencement of this action shall be turned over to the plaintiffs and credited by them upon the amount hereinabove found due by the defendant, Sumter Pine & Cypress Company. Out of the proceeds of the sale of the said properties, rights, etc., the master shall first pay the costs and expenses of this action and any taxes which may be due, and then apply the remainder in the settlement of the amount hereinabove found due to the plaintiffs, and, if there be any residue, that then he pay over the same to whomsoever may be entitled thereto.

It is further adjudged that any of the parties hereto may have leave to apply at the foot of this decree for any order which may be necessary to correct any error in computation herein, or to carry into effect the provisions hereof.

*Messrs. L. D. Jennings* and *A. S. Harby,* for appellant.

*Messrs. Lee & Moise* and *Purdy & Bland,* for respondents.

January 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree made in the above case from his Honor, Judge Rice, on August 4, 1915. For an understanding of the case, the decree of his Honor should be reported. After entry of judgment, appellant appeals, and by 16 exceptions imputes error and seeks reversal.

Exceptions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15 and 16 are overruled. It is the duty of the appellant to satisfy this Court that the finding of fact by the Circuit Court is against the preponderance of the testimony. This appellant has failed to do, and we find no errors of law committed by his Honor, as complained of.

Exception 12 must be sustained.

Both the preliminary contract and final conveyance contained the provision that H. L. Scarborough should rent the mill site to the Sumter Company for a period of six years, at a rental of $150 per annum.

There is no allegation in the complaint that the Sumter Company failed to pay the rent or breached that portion of its contract. They paid the rent up to the time they shut down and abandoned the contract. That was sufficient to terminate the contract, and giving 30 days' note was unnecessary. The appellant was not put upon notice by the complaint that rent was asked, for the items of damages were for uncut timber, for punitive damages for tearing up of a tramroad, and no mention made of rent. While it it true that this Court has decided that the prayer of the complaint is no part of it, yet the complaint itself must allege fact sufficient to allow judgment in con-

formity to its allegation, and neither allegation of complaint or evidence in the case sustains his Honor's findings in this particular, and the decree of his Honor to this extent must be modified, and in all other particulars affirmed.

Modified.