59 N.J. Super. 583 (1960)
158 A.2d 343
ERWIN MUELLER AND HEDWIG MUELLER, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY HIGHWAY AUTHORITY, A CORPORATION OF NEW JERSEY, AND DWIGHT R.G. PALMER, COMMISSIONER OF THE STATE HIGHWAY DEPARTMENT OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1959.
Decided February 23, 1960.
*586 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Ralph W. Chandless argued the cause for plaintiffs-appellants (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Theodore W. Geiser argued the cause for defendant-respondent New Jersey Highway Authority, a corporation of New Jersey (Messrs. Shaw, Pindar, McElroy, Connell & Foley, attorneys; Mr. John J. McLaughlin on the brief).
Mr. William L. Boyan, Deputy Attorney General, argued the cause for defendant-respondent Dwight R.G. Palmer, Commissioner of the State Highway Department of the State of New Jersey (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiffs Erwin Mueller and his wife, Hedwig, appeal from a judgment of dismissal entered on motion of the defendants at the close of plaintiffs' case. The action is one in lieu of prerogative writs in which plaintiffs seek either an order requiring the defendants, the New Jersey Highway Authority (hereinafter "Parkway Authority") and the State Highway Department, to condemn in an appropriate *587 proceeding certain property alleged by plaintiffs to have been "taken" by the defendants, Brown v. Murphy, 136 N.J.L. 183, 185 (E. & A. 1947); Muszynski v. New Jersey Turnpike Authority, 27 N.J. Super. 248, 251 (App. Div. 1953), or an injunction preventing the continuous interference by defendants with what are alleged to be property rights of the plaintiffs. The theory of plaintiffs' case is that the defendants deprived them of an easement of access by erecting a concrete curbing for an exit ramp from the Garden State Parkway, thereby rendering their property, in effect, landlocked. The curbing curves around the southeasterly portion of the plaintiffs' tract, but no part of it is upon or tangent to any property of the plaintiffs at any point. For this reason, the trial judge of the Superior Court, Law Division, sitting without a jury, concluded that there was no "taking" of plaintiffs' property for which just compensation must constitutionally be made. 1947 New Jersey Constitution, Art. I, par. 20.
Plaintiffs own a large tract of land in Block 204 of the tax map of the Borough of East Paterson. The block is subdivided into about 33 separate lots, most of which plaintiffs own. The lots immediately concerned in this case are No. 21 and No. 22, having combined dimensions of 50 feet in width by 125 feet in depth, and located near the southeasterly corner of the tract. Plaintiffs purchased their land from John Fencsak by deed dated August 30, 1947. The deed refers to the property conveyed by reference to the lot numbers on a map entitled "Map No. 2 of Property of John Fencsak, East Paterson, Bergen County * * * January 17, 1927," which map is on file in the Bergen County Clerk's office. The lot numbers referred to are the same as the lot numbers on the tax map.
Plaintiffs' tract is bounded on the north by Rudolph Avenue, on the west by Bank Street, on the south partly by Route 46 which is a state highway, and on the east by the privately owned lots 17-20 which, in turn, front on Ray Street. Ray Street is now a dead-end terminating at the *588 south where it has been cut off by the Garden State Parkway exit ramp. The ramp provides an exit for southbound traffic on the Parkway and feeds such traffic into the westbound lane of Route 46.
Before Route 46 was constructed in 1936, the frontage of lots 21 and 22, then owned by Fencsak, was on a street known as Roosevelt Avenue. By deed in 1936 Fencsak conveyed to the State of New Jersey whatever "right, title, and interest" he may have had in Roosevelt Avenue, which was bisected diagonally by Route 46. Roosevelt Avenue was vacated by the Borough of East Paterson on December 4, 1946, nine months prior to plaintiffs' acquisition of the tract. The vacation ordinance apparently was not recorded in the county offices.
The lots to the west of No. 21 and No. 22 have been leased by plaintiffs to a tenant presently in possession for a four-year term. The lots to the north of No. 21 and No. 22 have been conveyed by plaintiffs since the institution of this suit. Those lots are zoned for residential use; the highway lots for commercial use. And, as stated, the lots to the east of No. 21 and No. 22 are in other ownership. Thus it is plaintiffs' claim that unless they are afforded access to Route 46 to the south, lots 21 and 22 will be landlocked.
The curbing erected by the Parkway Authority is located to the south of the middle line of what had been Roosevelt Avenue. While not contiguous to any of the plaintiffs' property, nevertheless it is claimed that the curbing prevents automobiles traveling west on Route 46 from entering lot 21 as well as lot 22 which adjoins on the west. The exit ramp feeds traffic into Route 46 in such a manner as to make it impossible for cars traveling west on Route 46 to gain access to lots 21 and 22 without a dangerous bucking of Parkway traffic coming off the ramp.
Erwin Mueller testified at the trial that when he purchased the property in 1947, he intended to use these lots for business purposes, that he thought the lots in question fronted on Route 46, and that the denial of highway access has made *589 it difficult for him to lease the lots. He further testified that before the curbing was constructed, no one had questioned his right to gain physical access to Route 46 by driving over what had been Roosevelt Avenue, and that he had continuously driven in and out of these lots from and to the highway ever since acquiring the property.
A previous application by plaintiffs that the ramp curb be cut to permit access was refused by the Parkway authorities  an obviously correct traffic decision. The Parkway Authority offered plaintiffs an alternative way of access through its land immediately east of plaintiffs' property, thereby providing a route to Ray Street, but the negotiations collapsed when the Parkway Authority refused plaintiffs' demand that it pave any such exit road.
Plaintiffs contend that lots 21 and 22 had an easement appurtenant for access to and egress from Route 46. They contend that this easement constitutes a property right and that the construction by the Parkway Authority of the exit ramp interferes with the easement and therefore constitutes a "taking" of private property for public use for which the plaintiffs ought to be compensated. It is clear that plaintiffs' grievance is only against the Parkway Authority and not against anything which the State Highway Department has done in connection with Route 46, and the dismissal of the case against the State Highway Commissioner is therefore affirmed.
We are not impressed with the argument of the Parkway Authority that there has been no taking of plaintiffs' property merely because the curbing does not physically invade or appropriate land as to which plaintiffs own a fee interest. A pre-existing easement of access to and from a public highway, possessed by an owner of land abutting on such highway, constitutes a right of property of which he cannot be deprived without just compensation, and it is of no consequence that he does not own in fee the roadway subject to the easement. Lindel Realty Co. v. Miller, 2 N.J. Super. 204, 212 (Ch. Div. 1948), affirmed 4 N.J. Super. *590 37 (App. Div. 1949); 29 C.J.S. Eminent Domain § 105 (1941); 18 Am. Jur., Eminent Domain, §§ 158, 183-185 (1938); 39 C.J.S. Highways § 141 (1944); 25 Am. Jur., Highways, §§ 154, 318 (1940); 10 McQuillin, Municipal Corporations (3d ed. 1950), §§ 30.54, 30.56, 30.63, pp. 649, 658-59, 669 et seq. Cf. County Park Commission of Camden County v. Kimble, 24 N.J. Super. 221, 227 (Ch. Div. 1952). And N.J.S.A. 27:12B-5 specifically authorizes the Parkway Authority to condemn easement rights of the kind alleged to exist here.
Apart from the conclusion that plaintiffs would be entitled to relief if they actually possessed the easement of access they claim, and if it was substantially interfered with, the record on review does not permit any other final determination of their rights. The precise factual situation involved here is obscure in so many respects that any legal conclusions based thereupon would be precipitate. Not only are the facts and exhibits unclear, but the legal principles which we conceive must necessarily govern the merits of the case have not been adequately briefed and argued. Fairness to the parties, as well as the necessity for a decision in this matter that will accord with substantial justice and the law properly applicable, dictates that they be afforded an opportunity to argue the matters hereinafter discussed after a retrial of the case to establish an adequate factual record for that purpose.
There is first the question as to whether the rights, which plaintiffs presently assert have been invaded, had not been transferred when Fencsak conveyed to the State by a full covenant warranty deed in 1936 his "right, title and interest" to Roosevelt Avenue over which the right of access to Route 46 is now claimed and certain other parcels of land described therein. Fencsak's deed to the State additionally conveyed slope rights on his adjoining lands. When Fencsak conveyed the lots in question to plaintiffs 11 years later, there was expressly excepted "that portion of said above described premises heretofore conveyed to the State of New *591 Jersey for state highway purposes." The parties to this case have not explored, except by way of implication, the significance of these transactions to the present controversy.
On the case before us, we are not in a position to decide whether the 1936 deed operated to release Fencsak's right of access.
Where property is conveyed to or condemned by a governmental authority for general highway purposes, such conveyance or condemnation does not preclude or extinguish the abutting owner's right of access onto that highway unless the taking instrument expressly indicates a contrary intention or unless it can be said that the abutting owner's loss of access rights was within the contemplation of the parties at the time of the taking and was therefore compensated for in the consideration or damage award. Liddick v. City of Council Bluffs, 232 Iowa 197, 5 N.W.2d 361, 380-381 (Sup. Ct. 1942); Anderlik v. Iowa State Highway Commission, 240 Iowa 919, 38 N.W.2d 605, 608 (Sup. Ct. 1949); Wenton v. Commonwealth, 335 Mass. 78, 138 N.E.2d 609, 611 (Sup. Jud. Ct. 1956); Mississippi State Highway Commission v. Spencer, 233 Miss. 155, 101 So.2d 499, 504 (Sup. Ct. 1958); Webb v. Maine-New Hampshire Interstate Bridge Authority, 102 N.H. 91, 152 A.2d 521, 524 (N.H. Sup. Ct. 1959). Unless it is clear that the highway use for which the land was acquired involved an obstruction of access which was contemplated at the time of the taking and that the public authority had bargained for the easement of access as well as for title to the right of way, the easement will not be extinguished or released by the conveyance. The reason for the rule is that, in making a conveyance of land for a proposed or existing highway, the abutter expects that he will be able to make a special use thereof for access purposes, and the consideration paid is fixed with regard to the advantages to be derived from the use of the highway. Liddick v. City of Council Bluffs, supra. The cases holding that a conveyance by an abutting owner to an authority did constitute a relinquishment of the easement involve factual *592 circumstances leaving no room for doubt as to the expectation at the time of the taking or conveyance that an obstructive highway use would ensue. See, e.g., South Meadows Realty Corp. v. State, 144 Conn. 289, 130 A.2d 290 (Sup. Ct. Err. 1957); Rhodes v. Iowa State Highway Commission, 94 N.W.2d 97 (Ia. Sup. Ct. 1959). Cf. Franks v. State Highway Commission, 182 Kan. 131, 319 P.2d 535 (Sup. Ct. 1957).
Unless on the remand evidence is submitted to indicate a contrary intention and understanding, the 1936 deed may be construed as a sale of Fencsak's title and interest to Roosevelt Avenue, parcel 30D and the other interests mentioned therein, and not as a relinquishment of his right of access to the highway. Such a construction is fortified by the probability that Fencsak so used Roosevelt Avenue until his conveyance to plaintiffs and by the fact that plaintiffs so used it until the obstructive curbing was constructed.
There is next to consider the effect of the vacation of Roosevelt Avenue by the municipality on December 4, 1946, almost nine months prior to plaintiffs' acquisition of the tract. The Parkway Authority seems to concede, without reflecting on the matter, that the effect of the vacation was to give Fencsak, and hence plaintiffs, a fee, free of the public easement of travel, to the center line of Roosevelt Avenue. See 11 McQuillin, Municipal Corporations (3d ed. 1950), § 30.202, p. 166. This obviously overlooks the fact that Fencsak had previously conveyed to the State the title in Roosevelt Avenue. We pass the question as to who is the title owner to the fee of the northern one-half of the vacated street and disregard for present purposes the Parkway Authority's concession that plaintiffs have title. The trial court should determine whether, if plaintiffs do not have a fee in the northerly half of the vacated avenue, they may nevertheless have an easement over what was Roosevelt Avenue to gain access to Route 46, as discussed above.
It is further conceded by the Parkway Authority that the vacation constituted merely a surrender of the public easement upon Roosevelt Avenue and could not infringe upon *593 the private right of access over that street that may have been possessed by plaintiffs' grantor. Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119 (1956). The Yara case refers approvingly to the principle that where a person acquires property by description locating it on a street dedicated by the grantor or predecessor in title and accepted as such, he has the right not to be landlocked as a result of a later vacation of that street by the public authorities. It is immaterial whether the abutter had a fee in the street or only an easement. 11 McQuillin, op. cit., supra, § 30.188, p. 137. In order to know whether this rule of law applies in the present case, it should be established on the retrial herein whether Fencsak or a predecessor in title owned and dedicated the land on Roosevelt Avenue. See 3 Powell on Real Property (1959), § 409, p. 412; Attorney General ex rel. Stickle v. Morris & Essex R. Co., 19 N.J. Eq. 386, 391 (Ch. 1869), reversed on other grounds 20 N.J. Eq. 530 (E. & A. 1869), quoted from with approval by the Supreme Court in the Yara Engineering Corp. case, 22 N.J., at pages 127-128.
While the parties are therefore in agreement that the 1946 vacation could not affect Fencsak's easement of access, if any he had, there is no consideration given to the rights of grantees, like the plaintiffs, who purchased after the vacation. If the vacation ordinance is properly recorded or if the grantee has actual notice thereof, he will have, or be charged with, knowledge that the public easement over the street has been surrendered. Cf. R.S. 40:67-21. Here, it appears that the vacation ordinance was not recorded, and plaintiff's testimony was ambiguous as to whether he had actual knowledge thereof. Moreover, the record is not clear as to whether Roosevelt Avenue continued to be a traveled thoroughfare notwithstanding the vacation; the precise extent to which it was supplanted by Route 46 in the area in front of plaintiffs' lots; when and by whom it was dedicated to the municipality, and if and when accepted. The photographs in evidence reveal that the portion of Roosevelt Avenue in front of lots 21 and 22 is now apparently covered over with *594 grass and is not being traversed by motor vehicles. If this was the case in 1947, and no other basis for a legal right existed, plaintiffs could not justifiably have expected that these lots were anything else but landlocked property, and they might therefore not be entitled to damages.
It will also be illuminative to ascertain whether Fencsak ever used lots 21 and 22 as separate economic use units and whether plaintiffs contemplated in 1947 that each lot could be so used, or both together. Assuming that plaintiffs purchased with knowledge of the vacation and of the extinguishment of the public easement, it will then be necessary to determine to what extent, if any, this circumstance would or should affect plaintiffs' claim that a private easement of access was included in the purchase from Fencsak. In brief, the record should contain a full exposition of the physical and legal situation as regards the use of these lots and their frontage on the highway when plaintiffs purchased in 1947.
The principal contention of the Parkway Authority at the trial and on this appeal is that plaintiffs were not deprived of reasonable access to their property since the curbing construction blocked less than 50 feet of frontage on a tract having more than 1,000 feet of frontage on three public streets  Rudolph Avenue on the north, Bank Street on the west, and Route 46 on the south in front of those lots west of No. 21 and No. 22. Reliance is had upon the actual holding of the Yara case, supra, that abutting owners had no private rights in two paper streets significant enough to raise a cloud on the title to land lying within such streets, because each of the abutting lots had access to other streets and public highways. 22 N.J., at page 136. Cf. Dodge v. Pennsylvania R. Co., 43 N.J. Eq. 351, 363-364 (Ch. 1887), affirmed 45 N.J. Eq. 366 (E. & A. 1889). Plaintiffs' argument is that they have leased or sold all parcels adjoining lots 21 and 22, making indirect access difficult if not impossible, and that, in any event, commercial property on a heavily-trafficked highway is entitled to direct access thereto. Cf. Annotation, 43 A.L.R.2d 1072, 1076-79 (1955).
*595 The problem is whether the right of access inheres separately in each and every foot of frontage shown on the map, or whether it is enough that the tract as a whole has access to the public streets. The general rule is that the property owner is not entitled to access to his land at every point between it and the highway but only to "free and convenient access to his property and the improvements on it." Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 759 (Sup. Ct. 1957) (and cases cited therein); Holland v. Grant County, 208 Or. 50, 298 P.2d 832 (Sup. Ct. 1956); State Highway Department v. Strickland, 213 Ga. 785, 102 S.E.2d 3, 5 (Sup. Ct. 1958); 39 C.J.S. Highways (1944), § 141, p. 1081. Although Town of Tilton v. Sharpe, 84 N.H. 393, 151 A. 452 (Sup. Ct. 1930), and In re Appropriation of Easement for Highway Purposes, 93 Ohio App. 179, 112 N.E.2d 411 (Ct. App. 1952), have language indicating that the right of access extends along every point of the abutting property line, both were decided on the basis of reasonable access for the entire tract.
What constitutes reasonable access is a question of fact. Regardless of whether a large tract is subdivided, the owner is entitled to a direct outlet on the highway for each reasonably independent economic use unit thereof. Iowa State Highway Commission v. Smith, supra; State ex rel. Gebelin v. Department of Highways, 200 La. 409, 8 So.2d 71 (Sup. Ct. 1942). Cf. Mississippi State Highway Commission v. Spencer, supra. Here lots No. 21 and No. 22 have frontages of but 25 feet each. The factual question to be determined is whether or not, in the light of zoning provisions, building code and frontage requirements, and any other relevant consideration as to which the present record affords little, if any, information, the lots in question could have been utilized as an independent economic use unit, were access thereto from the highway available but for the curbing construction.
*596 The Parkway Authority relies upon a number of decisions, of which R. & A. Realty Corp. v. Pennsylvania R. Co., 16 N.J. Misc. 537, 542-543 (Sup. Ct. 1938), is representative, indicating that, at common law, a landowner could not complain of a change of grade of a street upon which his property abutted, even if the change impaired easements of light, air, or access. We do not regard the change of grade cases as analogous. The plaintiffs here are not complaining of an incidental depression of their land, but of the deprivation of the one specific indispensable appurtenance needed to make their lots of any practical use whatsoever  highway access. See discussion of these problems in Note, 59 Colum. L. Rev. 1097 (1959).
Finally, it is possible that the distance between the end of the curbing and the westerly line of No. 22 is sufficiently wide to preclude a finding that ingress into that lot has been materially impaired. It is clear that egress from the lots has not been impaired since a vehicle leaving lot 22 would not be running against the flow of traffic coming down the ramp. The trial court should make findings of fact as to whether any right of ingress has been impaired for both eastbound and westbound traffic on Route 46.
The judgment is affirmed as to the State Highway Commissioner, reversed and remanded for a retrial of the case as to the Parkway Authority.