UNITED STATES of America

v.

CERTAIN LAND IN the CITY OF NEWARK, COUNTY OF ESSEX, STATE OF NEW JERSEY, and the Rector, Wardens and Vestrymen of Grace Church in Newark, a Religious Corporation, et al.,

Harmil Holding Co., Morris and Helen C. Daniels, Mary Senick, David and Anna K. Daniels, and Krich Bros.

Appeal of UNITED STATES REALTY AND INVESTMENT CO.

No. 18987.

United States Court of Appeals, Third Circuit.

Argued Jan. 4, 1971.

Decided March 22, 1971.

Morris M. Schnitzer, Kasen, Schnitzer & Kraemer, Newark, N. J. (Waldron Kraemer, Newark, N. J., on the brief) for defendant-appellant.

Glen R. Goodsell, Dept. of Justice, Washington, D. C. (Shiro Kashiwa, Asst. Atty. Gen., Frederick B. Lacey, U. S. Atty., Donald O'Connor, Asst. U. S. Atty., Newark, N. J., Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before GANEY and ADAMS, Circuit Judges, and WEIS, District Judge.

## OPINION OF THE COURT

GANEY, Circuit Judge.

The issue posed in this case is whether a landowner adjoining a city public street which was condemned by the United States, is entitled to compensation for the complete reduction of access to that street as a result of the taking. The district court dismissed the landowner's claim for damages.

The United States, on August 16, 1963, filed a complaint for the taking of a tract of land in the City of Newark, New Jersey, for the construction and maintenance of a building to be used, among other purposes, as a Federal courthouse. On the same day it deposited over half a million dollars—$612,-301—in the registry of the district court to cover the estimated value of the land condemned.

The tract was bounded on the west by Broad Street, on the east by Orchard Street, on the north by Walnut Street, and on the south by land owned by defendant-appellant, United States Realty and Investment Company. Approximately in the middle of this tract was a dead end public street 187½ feet long and 22 feet wide, known as Ardsley Court, which opened into Walnut

Street.[1] The dead end of Ardsley Court adjoined part of defendant's land.

On defendant's strip of land is a nine-story office building with a 50-foot front on Broad Street and a vacant lot of approximately fifty feet square to the rear. This lot abutted Ardsley at its southeasterly portion, and thus had access to Walnut Street over that small street. To the east of the vacant lot was a one-story brick building which in part abutted the remainder of Ardsley Court's dead end. Access to Orchard Street to the east was available from this building via a 7½ foot wide easement on private land south and east of defendant's land.[2]

When the time arrived for determining just compensation, if any, to be awarded it defendant waived jury trial and agreed to submit that issue to the district court on a stipulation of fact. In substance the stipulation stated that before the City of Newark had acquired it for a public street, Ardsley Court had been a private alley serving abutting landowners, including the defendant, that at the time of the filing of the declaration of taking, the defendant owned a building to the rear of its office building at 972 Broad Street, and that this building had access to Walnut Street (to the north) over Ardsley Court and to Orchard Street (to the east) over the 7½ foot wide easement, which easement is still in effect. Annexed to the stipulation is a survey or diagram of defendant's property divided into three parcels. The parcel designated as "A" represented the ground on which the office building is situated, the parcel designated as "B" represents the vacant lot, and the parcel designated as "C" represents the land on which the one-story brick building existed before it was torn down.

The district court, after deciding that defendant had sustained no compensable loss by the Government's taking of Ards-

ley Court, dismissed defendant's claim for compensation. In its opinion (314 F.Supp. 836, D.C.N.J. 1970) preceding the order of dismissal, the district court noted the defendant claims "that it is entitled to compensation in money damages for a diminution in value to its property due to the taking of Ardsley Court by the United States." The court found that (1) none of defendant's land was taken in the condemnation proceeding, and (2) "[w]ith the closing of Ardsley Court, the claimant's land became accessible only by the fronts of the buildings on Orchard and Broad Streets. U. S. Realty eventually tore down its building on Orchard Street, thus providing access once again to its *parking lot* and to the rear of its Broad Street Building. * * * " (Emphasis supplied.) Although the district court did not specifically find that these means of access were reasonable or suitable, since no damages were awarded, we must infer that it found them to be such. Defendant did not ask for a rehearing or seek to have the order amended, but appealed to this Court.

In connection with the finding that none of defendant's land was taken, defendant in its reply brief states that "the owner-appellant had a private easement in Ardsley Court, which was not extinguished when [the City of] Newark acquired the site of that street and which was expropriated by the Federal eminent domain taking. Thus, while property [owned by defendant] to which the easement was appurtenant, was not taken, the easement, which is itself property, was condemned. Here again, a question posed solely in terms of 'reduction of access', misstates the case."

The district court noted in its opinion that the Government sought to condemn Ardsley Court, but the City agreed to "abandon" it before the proceeding as to that parcel was completed.

---

1. After the Government brought this condemnation action, in which the city of Newark is named as the purported owner of Ardsley Court, the City of Newark "abandoned" the street.

2. Since the condemnation proceeding, the one-story building has been razed, giving the vacant lot access to Orchard Street.

Ordinarily, the abutting owners' title carries to the center of a right of way, and they, in common with each other, enjoy a private easement over it. When the City acquired Ardsley Court for use as a public street, it may have condemned the fee title to the street along with the private easement in the street possessed by the abutting owners, and paid the latter just compensation for the property taken. If this were the case, the abutting owners were left with nothing more than the right of ingress and egress from their land to the street, and an easement to use, along with the general public, the street for purposes not inconsistent with public use. In other words, their former rights, except ingress and egress, were extinguished. On the other hand, the City may have condemned only the private easement over the street. In this case, the abutting landowners would still own the fee to the middle line, and their private easement would become dormant, and they would obtain the right to use the street as members of the general public along with their private right of ingress and egress. See, for example, Jarman v. Freeman, 112 N.J.Eq. 308, 312–313 (Err. & App. 1912), 85 A. 184, 186. Upon the vacation of the street by the City, the private easement would be revived, Stockhold v. Jackson Tp., 136 N. J.L. 264, 55 A.2d 241 (1947), and the condemnor would be required to pay for its taking. Mueller v. N. J. Highway Authority, 59 N.J.Super. 583 (App. Div.1960), 158 A.2d 343; Peterson v. Pittsburgh Public Parking Authority, 383 Pa. 383 (1955), 119 A.2d 79. In the case before us the Government alleged in the complaint that the City of Newark is the purported owner of Ardsley Court and the City of Newark filed an answer claiming to be the owner. The defendant did not file an answer in which it could have either denied or qualified the statement of purported ownership. Nor did it offer any evidence of the specific property taken by the City when it condemned Ardsley Court. Since the record is barren of any information as to the property rights, if any, reverting to the abutting landowners, and the burden is on the defendant landowner to establish damages,[3] we must accept the district court's finding in this regard.

The finding as to reasonable access is also not clearly erroneous. The condemnor must leave an owner of land abutting a street with reasonable access to the highway for his purposes where he had access immediately prior to the condemnation.[4] However, an abutting owner is not entitled to damages under the Fifth Amendment to the Constitution for the taking or closing off of access to a highway where reasonably suitable alternative means of access remain. Ralph v. Hazen, 68 App.D.C. 55, 93 F.2d 68, 71 (1937); Highway Holding Co. v. Yara Engineering Corp., (1956), 22 N.J. 119, 136, 123 A.2d 511, 521; Palisades Properties, Inc. v. Brady, 79 N.J.Super. 327, 359 (Ch.Div.1963), 191 A.2d 501, 518–519, reversed on the ground the unconditional vacation of the street by the City was invalid, 44 N.J. 117, 207 A.2d 522. Also see Tubular Service Corp. v. Com. of State Highway Dept. of N. J., (App.Div.1963), 77 N.J.Super 556, 562–565, 187 A.2d 201, 204–206, aff'd per curiam 40 N.J. 331, 191 A.2d 745. What constitutes reasonable access is a question of fact. The district court found that defendant's land, as a unit, has reasonably suitable access to the streets despite the taking of Ardsley Court by

---

3. United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); Ralph v. Hazen, 68 App.D.C. 55, 93 F.2d 68 (1937).

4. United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787 (1910); Mueller v. N. J. Highway Authority, 59 N.J.Super. 583, 588–590 (App.Div.1960),

158 A.2d 343, 349–350. If, as the result of the vacation of a dedicated street an abutting owner on such street is left without any access to a public street or highway, such owner may have an action for damages for the injury to his property. Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 136 (1956), 123 A.2d 511, 521.

the Government, whose right to take is unchallenged here.

It is true that a New Jersey Court has stated that "regardless of whether a large tract is subdivided, the owner is entitled to a direct outlet on the highway, for each reasonably independent economic use unit thereof." See Mueller v. N. J. Highway Authority, *supra,* 59 N.J.Super. at 595, 158 A.2d, at 350. Upon the taking of Ardsley Court, Parcel "B" (the vacant lot), as a single unit and prior to the razing of the one-story brick building on Parcel "C," had no access to a street.[5] The district court in its opinion in going beyond the stipulation referred to Parcel "B" as being a "parking lot." But even if we assume that Parcel "B" was no longer useful for that purpose until the razing of the one-story brick building gave access to Orchard Street, there is no basis in the record from which an inference could be reasonably drawn that the lot was operated as an independent economic use unit, and not in connection with either Parcels "A" or "C," or both.[6] Defendant's reply brief states: "Moreover, the office building to the west [of the vacant lot] was deprived of its bulk delivery facility, having no such access from Broad Street." There is nothing in the record to support this statement, and statements of "facts" in briefs are not to be considered as substitutes for evidence or findings made by the fact finder. Moreover, were we to accept this statement as representing a stipulated fact, it would support the district court's treatment of the vacant lot as not being an independent economic use unit. Thus defendant has failed to meet its burden of proof on this score. Since the finding made by the district court is not clearly erroneous, it will not be disturbed by us.

The judgment will be affirmed.

5. The question of damages is to be determined as of the time immediately prior to the taking. See United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); Danforth v. United States, 308 U.S. 271, 283–284, 60 S.Ct. 231, 84 L.Ed. 240 (1939).

6. A parcel of land which has been used as an entity is to be treated as such in assessing compensation for the taking of part or all of it. See United States v. Miller, 317 U.S. 369, 375–376, 63 S.Ct. 276, 87 L.Ed. 336 (1943).