HIGHWAY HOLDING CO., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. YARA ENGINEERING CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.

CENTRAL GUARANTY MORTGAGE AND TITLE COMPANY (AND 12 OTHER TITLE INSURANCE COMPANIES), INTERVENORS-*AMICI CURIAE*.

Argued May 28, 1956—Decided June 25, 1956.

120 

*Mr. Emanuel Wagner* argued the cause for the appellant.

*Mr. Phidias L. Pollis* argued the cause for the respondent (*Messrs. Pollis and Williams,* attorneys).

*Mr. Harry Schaffer,* attorney for and of counsel with the intervenors-*amici curiae.*

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a summary judgment of the Superior Court, Law Division, entered on order

of the court awarding the return of a deposit of $1,000 made on a contract for the purchase of certain lands, together with search fees in the sum of $150. In entering judgment the trial court held, *inter alia,* that the title was unmarketable. The appeal was certified here on our own motion.

On application leave was granted to 13 title insurance companies to intervene in this appeal as *amici curiae.*

The facts in the case are stipulated. On June 24, 1954 the appellant and respondent entered into a contract for the purchase and sale of certain vacant lands presently fronting on the southeasterly side of State Highway Route 25 (U. S. Route No. 1), in Elizabeth, New Jersey, free of all encumbrances, and the plaintiff-respondent paid a deposit of $1,000.

In searching the title it was disclosed that the lands are located on a map entitled "Map of Building Lots belonging to J. C. Blake, A. S. Hotchkiss and others, City of Elizabeth, Essex County, N. J.," hereinafter called the "Blake-Hotchkiss Map," which was filed in 1855 in the Essex County Clerk's Office (Elizabeth being then a part of Essex County), and on May 17, 1929 in the Union County Register's Office. Each block on said map was divided into lots. Many lots were sold by lot numbers and metes and bounds binding on streets shown on said map. Such sales constituted a dedication of streets delineated thereon to the public.

Spruce and Spring Streets were laid out on the map but were never actually developed or used, and there are presently no physical indicia of such streets or buildings abutting thereon. Spring Street and portions of Spruce Street were vacated by the proper municipal authorities on October 18, 1928, September 2, 1931 and October 23, 1952.

A valuable part of the lands contracted to be sold lies within the limits of Spring and Spruce Streets so vacated. All of the properties covered by the map have access to unvacated streets and none of them is landlocked.

No action has been brought at any time relating to the vacation of the aforementioned streets. Respondent rejected

the title on the ground that it was unmarketable because all of the purchasers of lots on the Blake-Hotchkiss Map have private rights in Spring and Spruce Streets which survived the vacation thereof.

The matter was submitted on a stipulation of facts and the trial court found as a fact: (1) that Spring Street and Spruce Street were never accepted by the City of Elizabeth, although dedicated by the sale of lots with reference to the Blake-Hotchkiss Map; (2) that no lots on the said map are landlocked, and the premises contracted to be sold have access to a public highway without resort to these two paper streets; (3) the other lots which abut Spring Street and Spruce Street have access to other streets.

The court concluded as a matter of law: (a) because of the sale of lots with reference to the Blake-Hotchkiss Map, private rights in the street were created; (b) such rights would not have survived an acceptance and vacation of such streets by the City of Elizabeth; (c) such rights do survive the vacation of streets which have not been accepted by the public authorities; (d) that *N. J. S.* 2*A*:14-11 bars all owners of lots shown on the said map, except those whose lots abut Spring Street and Spruce Street and those whose rights of ingress and egress to a public street is solely over such streets; (e) because of the existence of such rights the title is unmarketable.

Two principal questions are presented: (1) when land is sold on or by reference to a filed map upon which lots and streets are laid out, what rights in the street do the purchasers on the map acquire by implied covenant from the grantor; and (2) when such streets have not been accepted but are vacated does the rejection of the dedication result in performance of the implied covenant; do the purchasers retain any rights in the streets after they are vacated?

The parties to this appeal are in accord on the following basic principles which are applicable. When lands are sold with reference to a map upon which lots and streets are delineated, there is a dedication of such streets to the public, *Trustees of the M. E. Church v. Hoboken*, 33 *N. J. L.*

13 (*Sup. Ct.* 1868); *Clark v. City of Elizabeth,* 40 *N. J. L.* 172 (*E. & A.* 1878); *New York & Long Branch R. R. v. South Amboy,* 57 *N. J. L.* 252 (*Sup. Ct.* 1894); *Dodge & Bliss Co. v. Mayor, etc., of Jersey City,* 105 *N. J. Eq.* 545 (*E. & A.* 1929), reversing 103 *N. J. Eq.* 552 (*Ch.* 1928), and such dedication continues and cannot be revoked except by consent of the municipality, *Packer v. Woodbury,* 3 *N. J. Misc.* 661 (*Sup. Ct.* 1925); *Long Branch v. Toovey,* 104 *N. J. L.* 335 (*E. & A.* 1928); *Hulett v. Sea Girt,* 106 *N. J. Eq.* 118 (*Ch.* 1930), affirmed 108 *N. J. Eq.* 309 (*E. & A.* 1931). After such dedication of streets to the public use, the public has the right to appropriate them at any time it wants or convenience requires, *Trustees of the M. E. Church v. Hoboken, supra; Simpson v. Klipstein,* 89 *N. J. Eq.* 543 (*E. & A.* 1918), no matter how long delayed, *Packer v. Woodbury, supra,* and these public rights can only be destroyed by proper municipal action, *Hulett v. Sea Girt, supra,* usually by vacation.

A resolution vacating a street does not take away, or in the least impair, the private rights of an abutting owner; it is only a surrender or extinction of the public easement. *United N. J. R. R. & Canal Co. v. National Docks, etc., Co.,* 57 *N. J. L.* 523, at *page* 524 (*Sup. Ct.* 1894).

The question of the nature and extent of the private right in these streets by the purchaser of a lot with reference to a filed map and whether such private right survives a vacation of the street after it has been dedicated but never accepted by the public authority, is *res nova* in this State. As both parties to the appeal point out, it has been discussed academically by way of *dicta* in a number of cases since very early times in this State, but in most cases where the precise question was involved the action was usually dismissed for one of three reasons: (1) in an injunction suit because a preliminary injunction does not issue where the law is doubtful and the facts are not clear; (2) a suit to enforce a contract by way of specific performance is dismissed

when it appears that the legal title is doubtful, since the court will not force a possible law suit on the purchaser; (3) the grantor was estopped by his grant.

The private right in question is separate and distinct from the right of the lot owners shared with the general public by virtue of the public easement impressed on the land by the dedication, or by the dedication and its acceptance by the public authorities. The question is one of intention and a right created by an implied grant, the intention being spelled out at the time and by the filing of the map, or its incorporation by reference in the deeds of the subsequent purchasers of the various lots.

It is settled that mere dedication of streets by a filed map or a reference in a deed to such map, and the opening of the streets as laid out, does not constitute them public highways, unless or until such streets are in some way accepted by public authorities or they are used by the public generally for 20 years as highways. *Holmes v. Jersey City,* 12 *N. J. Eq.* 299, at *page* 309 (*E. & A.* 1857); *Attorney General ex rel. Stickle v. Morris and Essex R. R. Co.,* 19 *N. J. Eq.* 386, at *page* 391 (*Ch.* 1869), reversed on jurisdictional ground *Morris & Essex R. R. Co. v. Prudden,* 20 *N. J. Eq.* 530, at *page* 539 (*E. & A.* 1869).

In the latter case, 19 *N. J. Eq.,* at *page* 391, Chancellor Zabriskie said "The purchasers of the lots acquire an easement or right in the lands so laid out as streets, and have a right to pass over them, and to have them taken by the proper authorities for public streets, without compensation to the owner." And at *page* 393, "Whether, after an acceptance by the proper authorities, or by public use, if the street should be vacated by legal proceedings for that purpose, and thus discharged from the public burthen, the owners of lots fronting upon the part so vacated, would retain the easement of a right of way, so far as to have a right of passage from and to the lots purchased, is *perhaps* not settled by *direct* adjudication." He called attention to a possible constitutional question where an owner has erected valuable improvements on a highway or street, and the street

is subsequently vacated by public authority or closed by the grantor, thus rendering his improvements valueless or greatly diminishing their value, which had been pointed out by Justice Vredenburgh in *State v. Snedeker,* 30 *N. J. L.* 80, 83 (*Sup. Ct.* 1862).

After citing certain New York cases, 19 *N. J. Eq.,* at *page* 394, he said "the doctrine maintained by Chancellor Walworth * * * would seem to point to a conclusion founded on correct principles; which is, that the purchaser of a lot on a street so dedicated, acquires a perpetual and an indefeasible right of access to his lot over the same, or *at least so much as leads from his lot to the next adjoining public street on each side, whether the same be accepted and adopted by the public as a highway or not,* and retains it, if after acceptance the same be abandoned by the public as a public highway." (Italics supplied.) However, he passed the question since the street had not been vacated.

In *Booraem v. North Hudson County Ry. Co.,* 40 *N. J. Eq.* 557 (*E. & A.* 1885), the deed, after a description of the premises conveyed and calling for a boundary upon the line of Ogden Avenue extended, conveyed to the grantee all the right, title and interest of the grantor to the lands covered by Ogden and Palisade Avenues in front of the land therein described. The complainant sought to enjoin the railroad company from erecting an elevated structure on Ogden Avenue extended. Mr. Justice Depue stated:

"The creation of a public right to be enjoyed *in futuro,* whenever the public authorities should see fit to adopt the extension of the avenue as a public highway, is not inconsistent with the private easement which enured to the grantee immediately from the grant. Indeed, whenever a dedication as a public highway is effected— as it usually is—by means of conveyances to private persons by reference to a proposed street over other lands of the grantor, the private rights of the several grantees precede the public right, and are the sources from which the public right springs. By such conveyances the grantees are regarded as purchasers by implied covenant of the right to the use of the street as a means of passage to and from their premises, as appurtenant to the premises granted, and this private right of way in the grantees is wholly distinct from and independent of the right of passage to be acquired by the public."

Then came the case of *Dodge v. Pennsylvania R. R. Co.,* 43 *N. J. Eq.* 351 (*Ch.* 1887). In that case, pursuant to statute, an agreement was made between Jersey City and the Pennsylvania Railroad Company that a plan adopted by the railroad for the elevation of their road and approved by the municipal authority rendered it necessary that a part of Green Street be vacated and closed. Complainants claim that the destruction of part of the street which had been vacated would do them irreparable injury and asked an injunction. When they took title Green Street was one of the streets set up on the Mangin map which was completed and adopted by the Associates of the Jersey Company who, under their charter, had important municipal powers to make and lay out streets. The lands abutted on Green Street, one of the streets on the map, and the complainants claimed an easement and right of way over all the streets laid out on the Mangin map, particularly in and over Green Street, which complainants asserted constituted a part of their private property.

Vice-Chancellor Van Fleet stated that the private right thus claimed was the sole foundation of the action and that a grantee in such a case, if his grantor owns the fee in the street in front of the land conveyed, takes to the middle of the street by mere force of legal construction, unless a contrary intention is apparent on the face of the deed or is unmistakably shown by the situation of the parties and the nature and character of the transaction.

After approving the language above quoted from *Booraem v. North Hudson County Ry. Co., supra,* 43 *N. J. Eq.,* at *page* 357, he stated:

"This right in the street, which is thus recognized as passing to the grantee, rests entirely upon implication; for, if regard were had alone to the words used to describe the thing granted, and they were construed according to their natural sense, and as they are universally understood, when applied to any other monument as a boundary, it is clear that all right in the street would have to be held to be excluded, for the street is mentioned, not as a part of the subject of the grant, but as defining the limit or boundary of the thing granted. They take the grantee to the street, but give

him nothing in it. Such implication is, however, made, in cases like the one mentioned in the opinion just quoted, to give effect to what has been described as 'the paramount intent of the parties, as disclosed by the whole scope of the conveyance, and the nature of the property granted;' and where land is conveyed as abutting on a proposed street, before a public highway in fact exists there, and a way over such proposed street is essential to the beneficial enjoyment of the land granted, or even a desirable accessory to it, the implication that, until the proposed street becomes an actual highway, the grantee shall have the use of it as a means of passage to and from his land, seems not only to be reasonable and just, but absolutely necessary to give effect to the manifest intention of the parties. But that case, [the Booraem case] it will be observed, differs in a very material respect from the case in hand. The lands here were conveyed, not as abutting on a proposed street, but on a street which was a public highway in law. When that is the case, the grantee gets everything which it can be said he expected to get, or which he supposed the grantor intended to grant to him, and there is therefore nothing to be supplied by implication."

The court then found as a fact that the vacation of Green Street would merely result in the grantee having to make a detour to reach other streets on the map, and held that the inconvenience from this increase in distance could scarcely be regarded as an injury sufficiently substantial or serious to make the interposition of the court by injunction necessary or proper.

In *Stevens v. Headley,* 69 *N. J. Eq.* 533 (*Ch.* 1905), in a suit to quiet title involving an easement of a private right of way shown on a map referred to in the deed, the learned Vice-Chancellor Pitney had occasion to discuss the quality of a private right of way. In reviewing the common law authority he stated that the familiar rule is that easements of a private way lie in grant and are not the subject of possession, hence they must be created by a written grant or its equivalent. This may be by express grant or by implication, as in the case of a way of necessity, or by long adverse user, which for the sake of consistency was always supposed to arise out of a lost grant, or a right of way may be created, so to speak, in equity, by an estoppel, as where a party so acts as to lead another to believe that a right of way does exist, and that a party has so far acted

upon it as to render it inequitable for the other to deny that the right of way exists. He stated:

"One quality of a private right of way is that it must be from somewhere to somewhere. Thus, by the ancient rules of pleading in pleading a private right of way, the pleader should state the *terminus a quo et ad quem* of the way."

He carefully reviewed the language used by Chancellor Zabriskie, Mr. Justice Depue and Vice-Chancellor Van Fleet in *Attorney General v. Morris & Essex R. R. Co., supra; Booraem v. North Hudson County Ry. Co., supra;* and *Dodge v. Pennsylvania R. R. Co., supra,* and stated that these cases fully recognize the doctrine laid down by Chief-Baron Comyn above stated "that each end of a private way must either be some public place or some private place where the occupant has some right to go."

After reviewing some of the statements of Mr. Justice Depue in the *Booraem* case he said:

"But it is quite plain from this and other similar language used by other judges in this state in such cases that the implication arising under such circumstances, whether it be founded on implied covenant or on estoppel, is confined to such use of the road or street as is necessary or useful for the beneficial enjoyment of the lot conveyed. And in general the language used by the judges is that the right is to a right of way for access from some public highway to and from the premises conveyed."

After reviewing certain New York and Massachusetts cases he gave approval to a statement of Mr. Justice Morton in *Regan v. Boston Gas Light Co.,* 137 *Mass.* 37 (*Sup. Jud. Ct.* 1884):

" 'The references to the plan in the deed by the grantor was merely for the purpose of description and boundary, and not with the intent to convey by implication *remote rights of way not necessary to the enjoyment of the premises conveyed.*' "

The case of *Roberts v. West Jersey & Seashore R. R. Co.,* 72 *N. J. Eq.* 326 (*Ch.* 1907), factually is similar to *Dodge v. Pennsylvania R. R. Co., supra,* except that in that case

Vice-Chancellor Leaming expressed this thought as to the extent and duration of the implied covenant of a private right of way in a dedicated street:

"If it were necessary in this case to determine whether private rights, acquired in this manner, survive after the street has been accepted by a municipality and thereafter vacated, I should favor the view that the implied covenants from which these rights emanate relate only to the period of time between the original act of dedication and its consummation arising from the acceptance by the municipality; that the implied covenants contemplate not only the probable future acceptance by the municipality, but also contemplate the surrender of entire dominion and control to the municipality for the public welfare when such dedication shall have been consummated by public acceptance. But this view is not essential to the proper disposition of the present application, * * *."

While admitting that the law in other states was conflicting whether the right survived an acceptance of the street by proper authorities, the Court of Errors and Appeals approved his statement " 'I know of no case, decided by a superior court in this state, which so declares the law.' " *Coombs v. Atlantic City R. R. Co.,* 96 *N. J. Eq.* 709, 713 (*E. & A.* 1924).

Somewhat similar views were expressed by Vice-Chancellor Buchanan in *Schweitzer v. Adami,* 110 *N. J. Eq.* 193 (*Ch.* 1932), although he subsequently denied specific performance because the question was in doubt as to the nature of the right of way by implied covenant. He suggested that the private right to use the highway is quite a different thing than the ordinary right of way, and stated it is a private right to the use and benefit of the streets as if they were public streets, and if the streets are already public highways, then no private right by implied easement arises; but this is so *only* when the street is a public highway in law. *Dodge v. Pennsylvania R. R. Co., supra.* Although the dedicated streets involved in the case before him had never been accepted but were subsequently vacated, he said:

"The private right which is raised by legal implication for the protection of the purchaser, under the circumstances mentioned, cannot and will not be deemed to include any greater characteristics

than are reasonably necessary for such protection. It is not reasonable that any greater rights should be implied in his favor than he would have had if the circumstances had not required the raising of the implied right, *i. e.*, if the streets had actually been public streets. It is not reasonable therefore that there should be included, as a part or characteristic of the implied right, that it should continue any longer than the continuance of the circumstances which caused its genesis and its subsequent existence—nor that it should be revived by a later vacation of the public rights in the street."

The views of these two learned vice-chancellors appear to go beyond the limits indicated in the earlier cases which merely indicated a possible merger on the acceptance.

This was made clear by Mr. Justice Case in *Schweitzer v. Adami*, 113 *N. J. Eq.* 46, 50 (*E. & A.* 1933), where, after adverting to their views, he said:

"We are thus left with repeated expressions of doubt by our courts as to whether or not private rights in a proposed street become merged in the public right when the dedication is consummated by public acceptance and whether or not such private rights, if they do merge, are thereby extinguished or are merely suspended and revive upon subsequent abandonment of the public right. The situation therefore is such that the defendant is being asked to take a title over which there hangs a doubt, even assuming, which is not proved, that there was a public acceptance of the dedication of Park avenue and the park lands; and over which there impends a more serious doubt if there was no such acceptance, for in that event it might well be argued that there was no merger."

It is the genius of the common law that it grows and adapts itself to changing conditions. There can be no question that doubts as to the nature and extent of an implied private right of way of abutting owners in dedicated streets constitute abstract clouds on the title to land. The time has long since passed for further academic discussion and the problem requires a finality of determination since the public policy of this State favors alienation of property and its ready marketability and it seems to us it necessarily does not encourage a recognition of abstract claims of defects in title when the damage to the user of the property is highly speculative, uncertain and in some instances almost microscopic.

■ As an abstract proposition we agree with the statement of Chancellor Zabriskie that the purchaser of a lot upon a street so dedicated acquires a perpetual and indefeasible right of access to his lot over the same, or at least over so much as leads from his lot to the next adjoining public street on each side, whether the same be accepted and adapted by the public as a highway or not, and retains it, if after acceptance the same be abandoned by the public as a public highway.

■ We are likewise in accord with the holding of Vice-Chancellor Van Fleet in *Booraem v. North Hudson County Ry. Co., supra,* that in the case where lands are conveyed abutting on a street which was a public highway in law at the time of the conveyance, then the grantee gets everything which it can be said he expected to get or which he supposed the grantor intended to grant him and there is nothing to be supplied by implication. In such case a grant of a private right of way in the highway should not be implied. This proposition holds true when such streets or public highways in law appear on a filed map or when such map is incorporated by reference in a deed of conveyance.

■ In a situation where streets are dedicated by the filing of a map and conveyances are made by reference to the filed map, the cases all hold that when the streets are accepted by proper authority as public streets or highways they can be and are taken over with the easement of a private right of way in the street without any compensation to the owner. For the obvious reason that the result of such acceptance is that the owner had everything he had before and there has been no damage to the user of his property.

It is the damage to the user of the property that is of the essence of this problem from a practical constitutional standpoint.

■ The yardstick is the principle stated by Vice-Chancellor Pitney in *Stevens v. Headley, supra,* that the implied grant of a private way in the street is confined to such use of the road or the street as is necessary for the beneficial enjoyment of the lot conveyed. It is the right to a right

of way for access to some public highway to and from the premises conveyed.

 Where a street has been dedicated as a public street by the filing of a map and its subsequent incorporation by reference in deeds of conveyance, and such street is accepted as a public highway by proper authority, if the street is subsequently vacated in accordance with law, the owners of property on the filed map are constitutionally entitled to compensation only for the actual damage to the user of their property resulting from such vacation. If abutting owners on such vacated streets or other streets shown on the filed map as entering or crossing the vacated streets have rights of way of access to other streets on the map or actual existing public highways in law, whether on the map or not, the damages to the user of the properties of such abutting owners are as a practical matter so inconsequential and speculative that they could not in all probability be established with any degree of exactness, if they could be at all. *Cf. Dodge v. Pennsylvania R. R. Co., supra.*

 The inconvenience arising from any increase in travel distance can hardly be regarded as an injury sufficiently substantial or serious to call upon a court to make any award in excess of what is popularly called nominal damages. A cloud on title necessarily must have more substance than this.

As to all other owners on such filed map whose properties abut on streets which give them access to all the other streets as shown on the filed map or other public highways, their damage is likewise *a fortiori*·speculative and too remote to call for any action by a court of law.

But in the situation pointed out by Justice Vredenburgh in *State v. Snedeker, supra,* and discussed by Chancellor Zabriskie in *Attorney General ex rel. Stickle v. Morris & Essex R. R. Co., supra,* 19 *N. J. Eq.,* at *page* 391, where the street was subsequently vacated by public authority and the owner had made substantial improvements upon the abutting property, and the result of the vacation was that he was left without access to a public street, then such owner

has a right constitutionally to recover for such damage based upon the assertion of his private right in the street as distinguished from the public right in the street.

We are not in accord with the suggestion of Vice-Chancellor Buchanan in *Schweitzer v. Adami, supra,* that this private right of way to use a dedicated public street is quite different from the ordinary right of way over a grantor's lands. We think that in either case it must be implied as appurtenant to the land for its proper use; that a private right of way in a street is confined to such a use of the road or street as is necessary or useful for the beneficial enjoyment of the lot conveyed; that it is a right to a right of way or access from or to some public highway to or from the premises conveyed. Therefore, if as the result of the vacation of any such street, an abutting owner on such street or abutting owners on other dedicated streets are left without any access whatsoever to a public street or highway, such owners may have an action for damages for the injury to their property and its appurtenances.

In this view of the law it would seem that since the private right of way is in the nature of an easement the circumstance of subsequent acceptance or non-acceptance by the municipality are immaterial considerations. *Cf. L.* 1950, c. 286; *N. J. S.* 2A:14–11.

On the facts in this case that no lots on any of the streets on the Blake-Hotchkiss map are landlocked, all having access to other streets or public highways, and the other lots which abut on Spring and Spruce Streets having access to other streets and public highways, and the premises contracted to be sold having access to a public highway and other streets without resort to these paper streets, we must necessarily conclude that the properties are not impressed with a private right of easement in the use of the paper streets in favor of other owners on any streets shown on the map which would be constitutionally compensable in law and the title is marketable.

In this view of the applicable law we have no reason to construe *N. J. S.* 2A:14–11, except to observe that we

would be reluctant to undertake to construe the phrase "or whose right of ingress and egress to a public street * * *" to read "and whose right of ingress and egress to a public street etc." The statute in its present form is grammatically correct and we are precluded from re-writing legislative acts unless it clearly appears that the language employed was not that intended by the Legislature and resulted from typographical error.

Here, however, we feel quite certain, in the light of the decision in this case, the Legislature will re-examine this statute in light of the views expressed herein.

 We have had no reason to discuss the holdings in *Lennig v. Ocean City Assn.*, 41 *N. J. Eq.* 606 (*E. & A.* 1886); *Bridgewater v. Ocean City R. R. Co.*, 62 *N. J. Eq.* 276 (*Ch.* 1901), which holdings we approve, but we point out they did not involve a private way in a street. The court judicially notices the fact that camp meeting grounds and camp meeting associations are *sui generis* and are so treated by the Legislature, and the covenants in those cases with respect to the maintenance of a camp meeting ground were properly enforceable because of the nature of the representations and the purpose of the purchaser in buying in the locality. To some extent the case of *De Gray v. Monmouth Beach Club House Co.*, 50 *N. J. Eq.* 329 (*Ch.* 1892), is analogous. Such restrictive covenants are properly enforceable.

The case of *Walter v. Danisch*, 133 *N. J. Eq.* 127 (*E. & A.* 1943), did not involve a private way of an abutting owner in the use of a dedicated street. The implied grant therein was a way of necessity through the hallway of a building to a public street.

The judgment of the trial court is reversed. No costs.

*For reversal*—Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—4.

*For affirmance*—Chief Justice VANDERBILT, and Justice HEHER—2.