NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-6169-12T1

MANHATTAN TRAILER PARK
HOMEOWNERS ASSOCIATION, INC.,
VINCENT MOSCA AND NORMA CARRANZA,

    Plaintiffs-Appellants,

v.

MANHATTAN TRAILER COURT
AND TRAILER SALES, INC.,

    Defendant-Respondent,

and

MANHATTAN MTC ASSOCIATES, LLC,

    Defendant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| October 28, 2014 |
| APPELLATE DIVISION |

> Argued September 10, 2014 - Decided October 28, 2014
>
> Before Judges Lihotz, Espinosa and Rothstadt.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-912-10.
>
> Jeffrey M. Beides argued the cause for appellants.
>
> Russell J. Passamano argued the cause for respondent (DeCotiis FitzPatrick & Cole, LLP and Kaufman, Semeraro & Leibman, LLP, attorneys; J. Sheldon Cohen, of counsel; Mr. Passamano, on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

This dispute centers on the parties' respective rights and obligations under the Mobile Home Protection Act (the Act), N.J.S.A. 46:8C-2 to -21. Plaintiff Manhattan Trailer Park Homeowners Association, Inc. (the Association) is a nonprofit corporation comprised of the homeowner community residing in the North Bergen private residential leasehold community (the park property) owned by defendant Manhattan Trailer Court and Trailer Sales, Inc. The individual plaintiffs, Vincent Mosca and Norma Carranza, each lease a lot on the park property and also served as the president and assistant secretary of the Association, respectively.

Plaintiffs' complaint sought to enjoin defendant from selling the park property to a third-party, arguing the Association exercised its statutory right of first refusal provided under the Act. The trial judge disagreed and granted defendant's motion for summary judgment, after concluding the Association failed to pursue its right to purchase the park property. The motion judge held the two-year delay in advancing an agreement to purchase the park property "estopped [the Association] from seeking remedies under the [Act]."

On appeal, plaintiffs maintain the Act's provisions cannot be waived, as a matter of law, making the application of estoppel erroneous. Further, they assert defendant's failure to comply with the Act's notice requirements precludes its ability to transfer the park property. Alternatively, plaintiffs argue summary judgment was improvidently granted in light of the evidence that the Association exercised its right of first refusal, which defendant allegedly ignored.

Following our review, we conclude the anti-waiver provision of N.J.S.A. 46:8C-5 aims at unscrupulous landlords who attempt to circumvent the Act's requirements when leasing mobile home lots and does not preclude the court's ability to award equitable relief. Under the circumstances presented, we also hold defendant's failure to strictly comply with the Act's notice provisions was ultimately cured by its subsequent conduct that fully advanced the Act's spirit and purpose, giving the Association an opportunity to buy the park property. Further, despite this opportunity, the Association did not follow the process outlined in the Act to complete the purchase. We conclude the Association's failure equates to a refusal to exercise its right to acquire the park property. Accordingly, we affirm the summary judgment dismissal of plaintiffs' complaint.

We recite the facts taken from the summary judgment record, viewed in the light most favorable to plaintiffs, the non-moving party. Davis v. Brickman Landscaping, Ltd., __ N.J. __, __ (2014). Defendant, a New Jersey corporation, was equally owned by the estate of Julius Wassil (decedent), administered by Paul Kaufman, and Lynchen Wassil, decedent's former wife. Defendant's largest asset was the park property, which is comprised of 5.28 acres, divided into 130 mobile home pads, with each tenant owning his or her respective trailer unit set on a pad.

In the course of administering decedent's estate, Kaufman published notices in the New York Times and Bergen Record, soliciting offers for the purchase and development of the park property. Kaufman also mailed termination notices to the individual park residents, advising them the property would no longer be used as a mobile home park.

Prospective buyers transmitted offers to Kaufman, who decided the proposal by Manhattan MTC Associates, LLC (Manhattan) was best. Manhattan offered to buy the park property for no less than $5.5 million, with the possibility of additional sums paid, depending upon the number of lots approved for an affordable housing subdivision. Manhattan's offer did not contain a financing contingency. Kaufman negotiated acceptable contract terms for Manhattan's acquisition of the

park property, subject to Wassil's acceptance and approval by the Probate Part.

Sometime after receiving Kaufman's notice to quit, park residents formed an association, pursuant to the Act.[1] See N.J.S.A. 46:8C-15(a) (requiring mobile home owners to form an association to exercise rights granted under the Act). By letter dated December 11, 2008, Kaufman was advised of the Association's existence. Shortly thereafter, he conveyed the terms of Manhattan's offer by providing copies of correspondence between Manhattan and himself to the identified Association Board of Directors. The letter included the minimum sales price and highlighted key terms in Manhattan's offer. Importantly, Kaufman attached an unsigned proposed twenty-eight page purchase and sale agreement, drawn in accordance with the terms of Manhattan's offer. The proposed agreement left blank the appropriate sections to insert the identity and signature of the proposed purchaser, designated by the Association.

In a February 3, 2009 letter, Kaufman informed the Association's counsel "the opportunity to purchase [the park property was] on the same terms and conditions" as set forth in

---

[1] The Association's certificate of incorporation states it was formed on November 26, 2008. A Notice of Rights of the Association, as provided by the Act, was recorded on December 9, 2008.

Manhattan's offer. He also provided a report prepared in anticipation of the sale. Later that month, Kaufman met with members of the Association to discuss the terms of Manhattan's proposed contract of sale and the Association's right to match that offer. There, he informed the Association's representatives any "offer with a financing contingency was not acceptable," because Manhattan's offer contained no such contingency, which he considered "an essential term of the offer."

On February 20, 2009, the Association tendered its proposed terms to purchase the park property. The letter sent by Real Estate Advisory Development Services (READS), on behalf of the Association, provided for the same down payment amount, minimum purchase price, period of due diligence and other requirements as Manhattan's offer. Most significant, however, the Association's proposal required approval of the terms by the general membership of the Association and a contingency provision to secure and obtain $6 million to finance the acquisition, closing, and renovation costs. The READS letter attached a statement from ROC USA Capital, LLC that described its willingness to consider financing the Association's purchase of the park property if requisite underwriting requirements were met. The letter closed with a provision stating: "Upon agreement of transaction terms between Buyer and Seller, Seller's legal counsel will

prepare a contract for review and revision, if required, by Buyer and the subsequent execution thereof by Buyer and Seller."

On February 27, 2009, the Association's attorney sent a one paragraph letter informing Kaufman:

> [T]he homeowners of [the park] have voted to exercise their right of first refusal to purchase [the park property] as provided by New Jersey law. . . . Please prepare the contract of sale in accordance with the provisions of the . . . Act and have it delivered to our office immediately to enable us to comply with the terms of the statute.

Kaufman responded, explaining he already provided the form of the contract, mirroring the terms offered by Manhattan, which he attached to his January 12, 2009 letter sent to the Association's Board of Directors. Kaufman further noted the Association's suggested contractual alternative, which included a financing provision, was "not acceptable." Kaufman explained his prior efforts requesting details of any proposed financing were not answered and expressed his concern for the ability of the park owners to secure the necessary funds for the purchase. Kaufman repeated his request for funding source details and underwriting criteria to obtain the monies necessary to close. The Association never responded to Kaufman's inquiry.

Before the Probate Part, Kaufman moved for approval of the park property sale to Manhattan. Kaufman also sought an order

"extinguishing the right of first refusal of the [Association]." The Association was noticed and appeared before the Probate judge as a party-in-interest. Following argument, the judge, in a March 27, 2009 order, denied Kaufman's motion.

In May 2009, Kaufman secured Wassil's acceptance of the Manhattan sale agreement and again moved for approval of the sale. The judge concluded Kaufman was authorized to sell the park property and, on behalf of the estate, ordered he could execute the contract with Manhattan. However, the Probate Part judge declined to "extinguish the Association's rights," and the June 19, 2009 order stated: "This order does not adjudicate the rights, if any, of the . . . Association."

Plaintiffs filed this complaint alleging violations of the Act and the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and sought to enforce the Association's right to purchase the park property. Following discovery, defendant moved for summary judgment and dismissal of the complaint. Plaintiffs filed a cross-motion for partial summary judgment.

In a written opinion, following oral argument, the judge concluded defendant violated the notice provisions set forth in the Act. Nevertheless, she held summary judgment dismissal of the Association's complaint was warranted. The judge found defendant's violations of the notice provisions were "largely

mooted by the fact that [plaintiffs] have behaved in such a way as to have waived their right to a remedy. It is apparent from the record that, in addition to waiver, the doctrines of laches and estoppel foreclose any recovery by [p]laintiffs." Finally, the judge dismissed the CFA count, noting plaintiffs failed to demonstrate an ascertainable loss. This appeal ensued.

In our de novo review of a trial court's grant or denial of a request for summary judgment, we employ the same standards used by the motion judge under Rule 4:46-2(c). Brickman Landscaping, supra, __ N.J. at __. First, we determine whether the moving party has demonstrated there were no genuine disputes as to material facts, and then we decide whether the motion judge's application of the law was correct. Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 230-31 (App. Div.), certif. denied, 189 N.J. 104 (2006). In so doing, we view the evidence in the light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). Factual disputes that are merely "'immaterial or of an insubstantial nature'" do not preclude the entry of summary judgment. Ibid. (quoting Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954)). Also, we accord no deference to the motion judge's conclusions on issues of law. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010).

Here, the parties each suggest the other failed to abide by provisions of the Act. The Association contends defendant's violation of the notice requirements precludes its transfer of the park property to Manhattan and also argues the judge erroneously concluded the rights granted under the Act were subject to waiver and estoppel. Defendant acknowledges its failure to strictly meet the Act's notice deadlines, but maintains it cured all deficiencies; thereafter, the Association failed to execute an agreement of sale and proceed to closing.

To provide context to these and other arguments presented,

> [w]e begin by "read[ing] and examin[ing] the text of the act and draw[ing] inferences concerning the meaning from its composition and structure." 2A Norman J. Singer & J.D. Shambie Singer, <u>Sutherland Statutory Construction</u> § 47:1 (7th ed. 2007). That common sense canon of statutory construction is reflected also in the legislative directive codified at <u>N.J.S.A.</u> 1:1-1:
>
>> In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
>
> [<u>State v. Hupka</u>, 203 <u>N.J.</u> 222, 231-232 (2010).]

"[I]t is also incumbent that we 'harmonize the individual sections and read the statute in the way that is most consistent with the overall legislative intent.'" Comm. of Petitioners for Repeal of Ordinance No. 522 (2013) of Borough of W. Wildwood v. Frederick, 435 N.J. Super. 552, 565 (App. Div.) (quoting Fiore v. Consol. Freightways, 140 N.J. 452, 466 (1995)), certif. denied, __ N.J. __ (2014).

"In adopting the . . . Act, the Legislature intended to protect the continuation of mobile home communities, and to promote and encourage ownership and self-governance by the residents of these communities." Paradise Park Homeowners Ass'n, Inc. v. Riverdale Mgmt. Ass'n, 404 N.J. Super. 309, 314-315 (App. Div. 2008). The Legislature expressly declared the Act was "necessary for the welfare of the State and its inhabitants" and mandated the Act's provisions "shall be liberally construed to effectuate the purposes thereof." N.J.S.A. 46:8C-7.[2] See also Paradise Park, supra, 404 N.J. Super. at 328.

---

[2] Section 7 is part of the initial legislation adopted in 1977. See L. 1973, c. 153. The provisions at issue in this matter governing the residential leasehold community's rights of first refusal in the event of a sale of the park property, N.J.S.A. 46:8C-11 and -12, were added by L. 1991, c. 483 in 1995.

Under the Act, homeowners residing in a private residential leasehold community are granted a right of first refusal to acquire the "private residential leasehold community land" and an owner must notify residents of either a decision to sell such property, N.J.S.A. 46:8C-11, or if the owner receives a bona fide offer to buy such property, N.J.S.A. 46:8C-12. More specifically, a private residential leasehold community landowner must notify the board of directors of a homeowners' association, created under the Act, (1) of a decision to offer the leasehold community land for sale, including material terms such as "the price and the terms and conditions of sale[,]" N.J.S.A. 46:8C-11(a); and (2) when a bona fide offer to purchase such property is received, to notify the individual homeowners or their association within ten business days of the offer's receipt and, thereafter, to reveal its terms. N.J.S.A. 46:8C-12(a) and (b).

Here, the operative provision of the Act is N.J.S.A. 46:8C-12, as Kaufman received a bona fide offer to acquire the park property from Manhattan. Manhattan's offer triggered the need to send notice to the homeowners. Once the homeowners are informed of a bona fide offer to purchase the park property, the park property owner may not proceed with any third-party sale while the homeowners take the following steps:

b.   Upon receipt of such notice the board of directors or trustees of the homeowners' association shall appoint from among its members a committee, not exceeding three persons, who may be assisted by such legal and other professional and technical counsel as the board may provide, to receive from the landowner the price and terms of the offer that has been made, and to negotiate the terms upon which the landowner would be willing to sell the private residential leasehold community land to the homeowners' association. . . .

c.   Not later than the 30th day next following its receipt of offering terms pursuant to subsection b. of this section, or following a period of extension agreed to by the committee and the landowner, the committee appointed pursuant to subsection b. of this section shall report to the board of directors or trustees of the homeowners' association the price and other material terms upon which the private residential leasehold community landowner has agreed to sell the private residential leasehold community land to the association.  In the absence of any agreement between the landowner and the committee, the landowner shall be deemed to agree to such sale upon the identical terms communicated by him to the committee pursuant to [the received bona fide offer].  The report of the committee shall include such supporting data and documentation as the committee and the landowner have agreed upon to be so submitted and authorized to be disclosed. The price and other terms so agreed upon and reported shall be binding upon the landowner for 10 days next following the submission of the committee's report, and if agreed to by the board of directors or trustees of the homeowners' association and consented to by two-thirds of the homeowners in that private residential leasehold community land shall constitute a contract of sale.

A-6169-12T1

d. During the period provided for negotiations and for consideration by the association's board of directors or trustees under subsection c. of this section the landowner shall not conclude any agreement for sale of the private residential leasehold community land to any other party, but may negotiate with any other party as to terms and conditions of such an agreement, contingent upon the failure or refusal of the homeowners to exercise their prior right of purchase under this act.

[N.J.S.A. 46:8C-12.]

Plaintiffs contend defendant's failure to comply with the notice provisions in N.J.S.A. 46:8C-12(a) precludes transfer of the park property to Manhattan because defendant could not file an affidavit of compliance, as mandated by N.J.S.A. 46:8C-14. This section of the Act provides:

In addition to other prerequisites for recording, no deed evidencing transfer of title to a private residential leasehold community land shall be recorded in the office of any county recording officer unless, accompanying the application to transfer the title is an affidavit annexed thereto in which the owner of the private residential leasehold community certifies:

. . . .

b. with reference to an offer received by him for the purchase of the land, or with reference to a counter-offer which he has made or intends to make to such an offer, he has complied with the provisions of section [N.J.S.A. 46:8C-12] of this act; or

c. notwithstanding his compliance with section 2 or 3 of this act, as applicable, no contract has been executed for the sale of the land between himself and the homeowners' association; or

d. the provisions of sections 2 and 3 of this act are not applicable to a particular sale or transfer of the land by him, and compliance therewith is not required; or

e. a particular sale or transfer of the land is exempted from the provisions of sections 2 through 5 of this act.

Responding to this argument, Kaufman does not challenge his failure to relate receipt of a bona fide offer from Manhattan within the ten-day window. However, he asserts the notice to homeowners of the proposed terms of sale within a week of learning the Association was created complies with the statute. Further, Kaufman ceased efforts to conclude a sale to Manhattan while the Association determined whether it would purchase the park property.

Kaufman also notes he served the park residents with a notice to quit on July 21, 2008, pursuant to N.J.S.A. 2A:18-61.1(h), a copy of which is not in the record.[3] As a practical

---

[3]   N.J.S.A. 2A:18-61.1(h) is part of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, which provides, inter alia, mobile home tenants may not be removed from park property unless "[t]he owner seeks to retire permanently the residential building or the mobile home park from residential use or use as a mobile home park[.]"

matter, however, he suggests he could not act for defendant or offer the park property for sale because the estate did not own a controlling interest in the corporation. In his certification before the Probate Part, Kaufman acknowledged after Manhattan's September 19, 2008 offer was identified as the best offer, he had not secured Wassil's, the equal co-owner, consent to proceed with a sale. Moreover, his authority to bind the estate to any agreement required approval of the court.

In our view of this issue, we conclude a liberal construction of the Act, which remains true to the legislative objectives, see Paradise Park, supra, 404 N.J. Super. at 328, requires a park owner to fully inform park homeowners not only of an actual offer for sale, but the intention to sell. Despite the uncertainty attached to Kaufman's endeavor when he placed the initial newspaper ads, realistically, the facts strongly suggest the eventuality of a sale of corporate assets (that is, the park property) was more likely than not. The Act's spirit required notice to homeowners of the prospect of such a sale, even if the specific terms were not solidified. See N.J.S.A. 46:8C-11(a). More important, once Kaufman narrowed the inquiries and acted to accept Manhattan's offer, the ten-day notice requirement of N.J.S.A. 46:8C-12(a) was unmistakably

triggered. Kaufman, however, did not inform the homeowners of the proposed offer for several months.

Nevertheless, we cannot agree with plaintiffs that such a lapse was fatal to defendant's pursuit of a third-party sale. Indeed, N.J.S.A. 46:8C-14 alerts the county recording officer of the statute's intended design, which allows mobile home park residents the opportunity to obtain ownership and control of the park property. The affidavit provision places the onus on the seller of park property to verify compliance with the Act and prevents recording a deed of transfer absent the affidavit of compliance. That said, it is neither mandated nor contemplated that a park property owner's failure to strictly comply with the stated notice provisions in N.J.S.A. 46:8C-11 or 12 bars alienation of the realty, absent the Association's assent. The purpose of the affidavit requirement assures residents received notice and the opportunity to purchase the park property prior to its cessation as a mobile home park, nothing more.

Here, although Kaufman was not strictly compliant with the notice requirements, the facts leave no doubt the Association and its members suffered no prejudice by the delayed notification. In essence, the homeowners were alerted the property would cease to be used as a mobile home park and may be sold. Thereafter, the Association was informed of the terms of

Manhattan's proposed offer. Kaufman provided a form of agreement to allow residents or their designee to buy the property under the same terms offered by Manhattan. Thereafter, Kaufman delayed further negotiations with Manhattan to give the Association ample opportunity to fully exercise the right to purchase the park property as granted under the Act.

Throughout this period, nothing suggests Kaufman took steps to advance the Manhattan deal or attempted to deprive the Association of its statutory right to match Manhattan's offer. There is no evidence Kaufman purposely sought to side-step the Act's requirements or adversely impact homeowners' rights. Kaufman's good faith was evinced by his efforts to meet with the Association's representative committee and candidly discuss his view that the absence of a financing contingency was a material term of Manhattan's purchase offer. Despite this knowledge, the Association submitted a counteroffer, proposing to extend the time to close because the offer was contingent on obtaining more than 100% financing of the acquisition costs. Kaufman immediately noted the terms materially differed from Manhattan's offer and sought details of the financing, which were never forthcoming. Even when Association counsel wrote to inform Kaufman of the Association's proposed exercise of the right of first refusal, Kaufman restated his request seeking details of

how the Association was going to pay the $5.5 million.  He also reinforced his acceptance if the Association would match Manhattan's terms.  No response was forthcoming, so Kaufman sought court approval of the Manhattan sale.  The Probate Part order, approving the Manhattan sale, was filed six months after Kaufman provided the agreement to the Association.

We do not abide by plaintiffs' rigid interpretation of N.J.S.A. 46:8C-12 and -14, which, if accepted, would impinge upon the alienation rights of a private property owner, an issue subject to constitutional limitations.[4]  See Borough of Merchantville v. Malik & Son, LLC, 218 N.J. 556, 568 (2014) (providing the taking of private property has always been subject to constitutional limits) (citation and internal quotation marks omitted).  See also U.S. Const., amend. V; N.J. Const., art. I, ¶ 20.  Instead, we view the law as requiring a park property owner to meet the Act's substantive provisions and

---

[4]   In addition to constitutional impediments, restraints on free alienability are also scrutinized based on public policy considerations.  See Cape May Harbor Vill. & Yacht Club Ass'n v. Sbraga, 421 N.J. Super. 56, 71 (App. Div. 2011) ("'It is firmly established that the policy of the law is against the imposition of restrictions upon the use and enjoyment of land and such restrictions are to be strictly construed.'" (quoting Hammett v. Rosensohn, 46 N.J. Super. 527, 535-36 (App. Div. 1957), aff'd, 26 N.J. 415 (1958))).  See also Highway Holding Co. v. Yara Eng'g Corp., 22 N.J. 119, 133 (1956) (stating "the public policy of this State favors alienation of property and its ready marketability").

effectuate its salutary purpose. Accordingly, we reject plaintiffs' arguments and confirm defendant provided more than sufficient notice to the Association and waited more than an adequate period of time to allow the homeowners to exercise their rights under the Act.

Next, we consider whether the Association properly proceeded to trigger N.J.S.A. 46:8C-12(c) which secures the Association's contract to buy the park property. The Association argues its February 27, 2009 letter advising Kaufman the homeowners "voted to exercise the right of first refusal . . . as provided by New Jersey law," equated to consent of two-thirds of the homeowners in the private residential leasehold community to accept the purchase of the park property under the same terms offered by Manhattan, thereby "constitut[ing] a contract of sale," as provided by N.J.S.A. 46:8C-12(c). Alternatively, the Association suggests, Kaufman ignored the Association's request to "prepare the contract of sale in accordance with the . . . Act[.]" We disagree and reject this attempt to deflect inaction onto Kaufman.

Once an owner informs homeowners of a bona fide offer to buy the park property, the burden to comply with N.J.S.A. 46:8C-12(c) rests upon the association. Specific actions must occur to result in a binding agreement, created by operation of law. Ibid.

It cannot be ignored that a week before Association counsel sent the February 27, 2009 letter, the Association's agent READS sent a proposal containing markedly different terms for purchase. Kaufman's understandable confusion was relayed, along with an attempt to secure more definitive information. Kaufman's efforts proved fruitless, as neither the Association nor counsel responded. The record fails to show efforts by the Association to secure financing from ROC or others, other than the initial inquiry regarding its possible availability.

While defendant understood it was bound to sell the park property to the Association or its designee "upon the identical terms" of the Manhattan offer, the Act imposes no obligation to accept a materially different counterproposal. N.J.S.A. 46:8C-12(c). If the Association desired to meet Manhattan's offer, as it now suggests, it merely had to complete and execute the contract document provided to it on January 28, 2009. This omission reflects that either the Association failed or refused to exercise its right to purchase under the Act. N.J.S.A. 46:8C-12(d). Thereafter, Kaufman was free to finalize the deed with Manhattan.

We also note the record contains no proof the Association's committee actually proposed a form of purchase to the homeowners or secured the necessary two-thirds vote to proceed to buy the

park property under the terms of Manhattan's offer. Counsel's one paragraph letter is not compliant with N.J.S.A. 46:8C-12(c). The notable absence of proof of the Association's fulfillment of the formalities mandated by this section of the statute cannot be overlooked. These prerequisites are absolutely necessary to reach a binding agreement of sale and cannot be inferred or assumed.

For completeness, we briefly address plaintiffs' suggestion the motion judge erroneously concluded the Association waived its rights. Plaintiffs maintain the express language of the Act demands homeowners' rights may not be waived. To support this notion, they rely on N.J.S.A. 46:8C-5, which states: "[a]ny provision of a lease or other agreement whereby any provision of this act is waived shall be deemed against public policy and shall be void." Placement of this section within the statutory scheme follows provisions imposing requirements on mobile home park owners prohibiting the mandatory purchase of equipment, N.J.S.A. 46:8C-2; restricting the sale of a mobile home by a park property owner, N.J.S.A. 46:8C-3; requiring written leases with all tenants and the prior provision and the conspicuous posting of the park's rules and regulations, N.J.S.A. 46:8C-4. Thus, the directive in N.J.S.A. 46:8C-5 aims at mobile home park landlords who attempt to circumvent these specific statutory

directives.  It is not intended, as plaintiffs suggest, to limit application of a court's exercise of equitable relief.[5]

Following our review, we conclude the Association failed to exercise its right of first refusal to purchase the park property as provided by N.J.S.A. 46:8C-12(d).  Consequently, Kaufman was free to complete the transaction with Manhattan. The order granting summary judgment will not be disturbed.[6]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5]    The motion judge's use of the term "waiver" referred to the Association's failure to effectuate its rights because the mere assertion by the Association of a desire to exercise the right of first refusal, unaccompanied by formal approval and required action, did not result in an agreement under the Act.  After an inordinate amount of time passed, far more time than statutorily required before Kaufman proceeded to effectuate the deal with Manhattan, the judge found the Association's inaction amounted to "a waiver," which estopped the Association from asserting a right to purchase the park property or thwart defendant's third-party sale.

[6]    We reject as lacking sufficient merit to warrant discussion in our opinion, plaintiffs' challenge to the dismissal of their assertion of a violation of the CFA.  R. 2:11-3(e)(1)(E).